## Urban et al. v. Lansing's Administrator.

(Decided May 22, 1931.)

ADAMSON & SPARKS for appellants.

WAUGH & HOWERTON for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

Some time during the month of September, 1921, a Hudson automobile owned by Paul Lansing of Lexington, Ky., was stolen by one M. T. Runyan. A few days later Runyan sold the automobile to appellant Louis Urban for $500. Urban was a resident of Ashland, Ky. Several months later Urban sold the automobile to some parties in Ironton, Ohio, for $900. More than a year after the car was stolen Lansing learned that Runyan had stolen it and had sold it to Urban.

On October 24, 1922, he brought this action in the Boyd circuit court against Louis Urban, Bessie Urban, his wife, and E. R. Norman, their son-in-law, to recover $1,400 from Louis Urban for the wrongful conversion of the automobile and to set aside a deed by which Louis Urban and wife had conveyed Urban's real estate in Ashland, Ky., to Norman, on the ground that the conveyance was fraudulent as to the plaintiff and made with the fraudulent intent to hinder and delay him in the collection of any judgment which he might obtain. During the pendency of the action, Lansing died, and the suit was revived in the name of his administrator, the Woodford Bank & Trust Company. Some time after this suit was instituted the automobile was located in Ironton, Ohio, and was recovered by Lansing's administrator.

On February 11, 1928, an amended petition was filed in which it was alleged that the automobile had been recovered and that Lansing and his estate had been put to an expense of $750 in their efforts to recover it after it had been stolen, and judgment was prayed for in the sum of $1,400, the value of the stolen car, and the further sum of $750 expenses incurred in connection with its recovery, subject to a credit of $150 which had been received for the car after its recovery. A motion was

filed to require the plaintiff to elect whether it would prosecute the cause of action set out in the original petition to recover the value of the automobile at the time it was stolen, or the cause of action set out in the amended petition for the expenses incurred in recovering it. The trial court sustained this motion, and the plaintiff elected to prosecute the cause of action set out in the original petition.

The defendants filed an amended answer in which they alleged that the automobile had been recovered by Lansing, or his personal representative, subsequent to its theft and had been converted to his use, or the use of his estate. In a reply to the amended answer, the plaintiff admitted that the automobile in question had been recovered, but alleged that at the time of its recovery its value did not exceed the sum of $150, and it prayed for judgment in the sum of $1,400 subject to a credit of $150.

The proof was taken by depositions and on the motion of plaintiff the case was submitted to the court for judgment. After the chancellor had read the record, he indicated that he intended to impanel a jury to pass on the issue of fact as to whether or not Urban knew the car had been stolen. On November 25, 1929, in the absence of appellants and their counsel, the court impaneled a jury and submitted to it this question: "Did the defendant, Louis Urban, know that the car mentioned in the evidence was a stolen car at the time he bought it?" After all the depositions had been read to the jury it answered the question, "Yes," and thereupon the court found that the fair market value of the automobile at the time it was stolen was $1,400 and that its fair market value at the time it was recovered by the plaintiff was $300, and adjudged that the plaintiff recover of Louis Urban the sum of $1,100, with interest from October 1, 1921. The court further adjudged that the deeds referred to in the petition were fraudulent and that they be set aside and the property sold by the master commissioner for the purpose of paying the judgment, interest, and costs.

The defendants have appealed from that judgment, and the principal ground urged for its reversal is the action of the court in impaneling a jury and submitting to it a question in issue in the absence of appellants and their counsel. In support of their motion and grounds

for a new trial the affidavit of appellants' attorney was filed in which he stated that he was unable to be present at the trial on account of illness, and that on November 24, 1929, the day before this case was set for trial before a jury, the presiding judge had agreed to continue all cases in which he was interested as counsel, and, relying on this statement of the judge, he had notified appellants not to be present on November 25, 1929.

It is argued that the trial of the case, under the circumstances, in the absence of appellants and their counsel, was prejudicial error for which the judgment should be reversed. The chancellor only desired the advice of the jury on the question submitted to them. He did not permit the attorneys for the plaintiff to argue the case, but merely had the depositions read to the jury and submitted the questions to them without argument or instructions. If appellants and their counsel had been present, they could have done nothing more than take part in the selection of the jury. The verdict of the jury was merely advisory, and a careful reading of the record leads us to the conclusion that, even if the jury had answered the question submitted to them "No" instead of "Yes," it would have been the duty of the chancellor to enter a judgment in favor of the plaintiff. However, in no view of the case were appellants prejudiced by the court's action in impaneling the jury in their absence to submit to them the question as to whether or not Urban knew, at the time he purchased the automobile, that it had been stolen.

It is conceded that the automobile which Urban purchased from Runyan had been stolen from Lansing. The motive with which one acts in converting the property of another to his own use is immaterial in an action of trover except in so far as it may affect a recovery of exemplary damages. Where the measure of damages applied is the value of the property at the time of the conversion and there is no claim for exemplary damages, the question of good faith is not involved. A wrongful intent is not an essential element of the conversion. The purchaser of stolen chattels acquires no title, however innocent he may be, and an innocent holder appropriating or disposing of stolen property is liable for conversion. In the instant case the plaintiff was not seeking exemplary damages but only the value of the automobile at the time of its conversion. Therefore, even though

Urban was without knowledge of the theft of the automobile, he was guilty of a conversion, and the plaintiff was entitled to recover irrespective of Urban's good or bad faith, knowledge or ignorance. Pool v. Adkisson, 1 Dana, 110. The generally recognized rule is thus stated in 28 American & English Encyclopedia of Law (2d Ed.) p. 702:

> "One who, though acting in good faith, purchases a chattel from a person in possession but without title or authority or indicia of authority from the true owner to sell, acquires, as against the true owner, no title, and the latter may maintain trover for its conversion; and if a person purchases chattels from one in possession but without title or authority from the owner to sell, and sells them again, or otherwise actually converts them to his own use, as by refusing to return them to the owner on demand, he is unquestionably liable for conversion though at the time of the purchase he was unaware of the rights of the true owner."

In Velsian v. Lewis, 15 Or. 539, 16 P. 631, 632, 3 Am. St. Rep. 184, the court said:

> "At first blush, it may seem strange that one who takes possession of goods or chattels under a contract of purchase from one who had no right to sell should be treated as a wrongdoer, but the explanation of the principle lies in the common-law maxim caveat emptor, which applies to the transfer of personal property. It is the buyer's own fault if he is so negligent as not to ascertain the right of the vendor to sell, and he cannot successfully invoke his bona fides to protect himself from liability to the true owner, who can only be divested of his rights or title to his property by his own act, or by the operation of law. Every person is bound at his peril to ascertain in whom the real title to property is vested, and, however much diligence he may exert to that end, he must abide by the consequences of any mistake. . . . Nothing can be plainer than that no one can sell a right when he himself has none to sell, and that every such wrongful sale, by whomsoever made, whether by thief or bailee, acts in derogation of the rights of the owner, and in hostility to his authority, and consequently can neither

acquire themselves, nor confer on the purchaser any right or title of such owner. Mere possession of another man's property affords no evidence that the person having such possession has power to sell it, and he who purchases or intermeddles with it must see to it that he is protected by the authority of one who has power to sell.''

In Bowers' The Law of Conversion, Sec. 252, the author says:.

"It is but a reiteration here to say that in the sale of goods a purchaser must look to his title, and if he obtains them from one who is neither the owner nor his authorized agent, he gets no title maintainable against the true owner. Upon this principle, if the goods have been stolen the property in them does not pass by delivery (unless, indeed, they be instruments in form negotiable) and a person who derives his title from or through the thief gains no rights as against the lawful owner, and if he either refuses upon the demand to give them up, or sells them and turns them into money, or otherwise converts them to his own use, he is liable to the lawful owner in trover. This doctrine has its foundation in public policy which admonishes purchasers thereby to be more cautious in the purchases they make and not by their zeal for cheap bargains to offer encouragement to thieves, who, if the loose habit of purchasers to buy everything offered for sale should no longer obtain, would find less profit in plying their avocation. Every vendee should have good reason to believe that his vendor has lawful authority to sell, and failing in this, it is no more of a hardship to hold him liable than it is to make the innocent owner lose his property.''

And in section 39 of the same treatise it is said:

"Since no title can pass through a thief, a purchaser of stolen property acquires no rights as against the rightful owner and he will be compelled to give up the property unless he has converted it, in which event he will be held in trover for its value. And the bare fact that a thief has possession of property is but prima facie evidence of title in him, and upon such appearance of ownership a purchaser

must rely at his peril as against the claims of the true owner. In other words, a purchaser of stolen property cannot defend against the rightful owner on the ground that he was an innocent and bona fide purchaser.'' Also see section 2651b-23, Ky. Stats.

Whether or not Urban knew that the car had been stolen was immaterial so far as plaintiff's right to recover for its conversion was concerned, and any answer that the jury might have returned to the question submitted to it could have had no bearing on the case.

It is next argued that the judgment is not authorized by the pleadings, for the reason that the judgment was for the damage to the automobile or the reduction in its value during the period from its theft until its recovery by Lansing's estate, while in its petition as amnded the appellee sought to recover the value of the automobile at the time of its conversion. While the action was pending, the defendants filed an amended answer in which they set up the recovery of the automobile by the plaintiff, and the plaintiff filed a reply in which it is alleged that the automobile when recovered was worth only $150, and asked for judgment for its value at the time it was converted, subject to a credit of $150, its value when recovered. The chancellor found that the value of the automobile when recovered was $300, and there is no evidence that it was worth more than that amount. The matter set up in plaintiff's reply did not constitute a departure from the cause of action set out in its petition. It merely pleaded matters in mitigation of damages. As said in 26 R. C. L., p. 1155, Sec. 71:

''Though the plaintiff is generally entitled to recover the value of the property converted, the defendant is permitted to show the existence of facts which would make it unjust to allow the plaintiff to recover such amount, as where the goods have been returned to and accepted by the plaintiff, at least when such return and acceptance occurred prior to the beginning of the action.''

Plaintiff's cause of action in trover against Urban was not barred by the recovery of the converted property, but the court properly permitted its value at the time of its recovery to be proven in mitigation of damages. Louisville & Nashville Railroad Co. v. Johnson, 226 Ky. 322, 10 S. W. (2d) 1104; Louisville & A. Railroad

Co. v. Blow, 136 Ky. 434, 124 S. W. 391, 26 L. R. A. (N. S.) 555; First National Bank of Louisville v. Boyce, 78 Ky. 42, 39 Am. Rep. 198.

It is finally insisted that the court erred in setting aside the deeds made by the appellants, Louis Urban and his wife, to their son-in-law, E. R. Norman. This property was in the name of Louis Urban on October 4, 1922. On that date the attorneys for Lansing wrote a letter to Louis Urban in which they informed him that it had been discovered that he had purchased the Lansing car which had been stolen by Runyan and making demand for $1,400. The letter was addressed to Urban at Ashland, Kentucky, with the senders' return address thereon. The letter was never returned to the attorneys for plaintiff. Urban denied receiving the letter, but on October 6, 1922, or two days after the letter was written, he and his wife executed deeds conveying all of his real estate to their son-in-law, E. R. Norman. There was sufficient evidence to authorize the finding of the chancellor that the transfer of the real estate was made with fraudulent intent, but it is argued that, at the time the judgment was rendered appellant, Louis Urban, owned sufficient property in the state of Kentucky subject to execution to satisfy the judgment in full, and therefore the transfers in question should not have been set aside. At the time the judgment was rendered, Urban owned an undivided one-half interest in 70 acres of land in Bath county worth about $1,000 and two lots in Ashland worth six or seven hundred dollars. However, these properties were acquired long after this action was instituted, and the appellee should not be required to surrender its lien upon the property that was fraudulently transferred merely because the transferor, subsequent to the institution of this action, acquired other real estate.

Judgment is affirmed.