**KIMBERLY & EUROPEAN DIAMONDS, INC., Plaintiff,**

v.

**William F. BURBANK, et al., Defendants.**

**No. C 81–0223–L(B).**

United States District Court, W. D. Kentucky, Louisville Division.

July 9, 1981.

Richard J. Frockt, Jeffrey B. Ritter, Louisville, Ky., for plaintiff.

Dennis R. Carrithers, Francis E. Bauman, Louisville, Ky., for defendant Burbank.

David A. McCullough, Louisville, Ky., for defendant Bohmer.

Thomas E. Clay, Louisville, Ky., for defendant Neal.

## MEMORANDUM

BALLANTINE, District Judge.

The fact situation from which this action arises defies credulity.

Plaintiff is a wholesale dealer in diamonds located in Dallas, Texas. According to the evidence adduced at the hearing on plaintiff's motion for a preliminary injunction, it is standard practice in the industry to send diamonds by registered mail to prospective purchasers. The stones are accompanied by a memorandum, the substance of which is that the consignee accepts the diamond at his or her risk for all hazards only for examination and inspection. The memorandum provides that the stone remains the property of plaintiff and the consignee indemnifies the merchant from all loss or damage. See Plaintiff's Exhibit 3.

On January 28, 1981, plaintiff mailed the diamond in question to the defendant Bohmer, accompanied by the usual memorandum. For reasons not entirely clear from the record, Bohmer delivered the diamond, which was 9.96 carats in weight and valued by plaintiff at about $44,000.00, to defendant Neal. Neal took the diamond from Lexington, Kentucky, where Bohmer lived, to Louisville, where he contacted Louis Straub, an attorney. Apparently Neal was pressed for cash necessary to conclude a transaction in which he was involved. Straub arranged a meeting between Neal and defendant Burbank, also an attorney. Neal needed $15,000.00 which he proposed to borrow from Burbank. He offered the diamond as collateral. Burbank sent Straub, Neal and the diamond to Brown-Waterhouse-Kaiser, Inc., a reputable jewelry firm in Louisville, for the purpose of having the diamond appraised. Brown-Waterhouse-Kaiser appraised the stone at about $50,000.00. Burbank instructed Brown-Waterhouse-Kaiser to retain possession of the diamond and to send Neal back to Burbank's office.

Neal returned to Burbank's office, where he executed a promissory note for $17,-000.00, the due date of which was left blank. See Plaintiff's Exhibit 1. The note was dated February 6, 1981. Burbank then gave Neal a certified check for $14,400.00 and another check for $600.00, both of which were drawn on his law firm's escrow account. See pages 32 and 33, Burbank's deposition, and exhibits thereto.

Sometime later Neal returned to Burbank's office, paid off the $17,000.00 note and retrieved the diamond.

On February 18, 1981, Neal approached Burbank again seeking to borrow $20,000.00, again pledging the diamond as security. Burbank prepared a promissory note for $25,000.00 due 10 days later which Neal signed. Burbank then drew a $20,000.00 certified check, payable to his order, against his firm's escrow account, and endorsed the check to Neal. See page 36, Burbank's deposition.

Neal apparently defaulted. Burbank granted him one or two extensions but increased Neal's indebtedness to $27,000.00, on which Neal also defaulted.[1] Burbank then began shifting the diamond from place to place—his lockbox at First National Bank, another jeweler in downtown Louisville and his law office.[2]

When the action by plaintiff was commenced the Court restrained defendant Burbank from transferring or disposing of the diamond pending a hearing on plaintiff's motion for a preliminary injunction.

After hearing evidence on plaintiff's motion for preliminary injunction, the Court granted the preliminary injunction and appointed the jewelry firm of Merkley Kendrick Jewelers as receiver. Burbank was ordered to deliver the stone to Merkley Kendrick which was done. Merkley Kendrick presently holds the stone pending further order of Court.

The matter is now before the Court on Burbank's motion to dismiss and plaintiff's motion for summary judgment.

## I.

We first resolve Burbank's motion to dismiss.

■ Burbank argues that Section 2–403 of the Uniform Commercial Code, KRS 355.2–403, is dispositive of his motion. This reliance is misplaced.

1. In the argot of those dealing in such loans, this is known as "vigorish."

2. The folly of keeping a stone of this size and value in a downtown law office should be apparent to anyone who reads the daily papers.

KRS 355.2–403 reads in pertinent part: "(1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased." The uncontroverted evidence discloses beyond cavil that Bohmer acquired no title to the diamond when it was mailed to her by plaintiff. She testified that she knew and told Neal that she didn't own the diamond and that the owner was from Dallas (T.E. 39). Obviously Neal acquired whatever title Bohmer had, which was none. That is all he could transfer to Burbank.

Burbank's motion is patently without merit, as are his arguments based upon the Uniform Commercial Code, and his motion to dismiss will be denied.

## II.

■ We turn next to plaintiff's motion for summary judgment. Plaintiff argues that the provisions of the Uniform Commercial Code have no application here and we agree. The fact situation demonstrates beyond peradventure that this action sounds in the tort of conversion. Dean Prosser defines conversion as:

"... an intent to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights. A purchaser of stolen goods or an auctioneer who sells them in the utmost good faith becomes a converter, since his acts are an interference with the control of the property. A mistake of law or fact is no defense. 'Persons deal with the property in chattels or exercise acts of ownership over them at their peril,' (footnote omitted) and must take the risk that there is no lawful justification for their acts." Prosser, *Law of Torts*, 4th Ed., Section 15 at p. 83 (West, 1971).

It seems that weekly a law office is burglarized and, indeed, recently the chambers of Jefferson District Judge Alan Farber in the Hall of Justice were burglarized.

This Circuit has recently had occasion to define conversion in *Mansbach v. Prescott, Ball & Turben,* 598 F.2d 1017 (6th Cir. 1979), where Judge Celebrezze wrote:

"This may not be a garden variety conversion case in which the malefactor has wrongfully pocketed the property of the plaintiff but that is not necessary for a common law conversion claim. All that is necessary is that the defendant exercise dominion and control over the property which is inconsistent with the plaintiff's rights." 598 F.2d at 1027.

The most recent case in Kentucky dealing with conversion is *Urban v. Lansing's Administrator,* 239 Ky. 218, 39 S.W.2d 219 (1931), in which the then Court of Appeals wrote:

"It is conceded that the automobile which Urban purchased from Runyan had been stolen from Lansing. The motive with which one acts in converting the property of another to his own use is immaterial in an action of trover except in so far as it may affect a recovery of exemplary damages. Where the measure of damages applied is the value of the property at the time of the conversion and there is no claim for exemplary damages, the question of good faith is not involved. A wrongful intent is not an essential element of the conversion. The purchaser of stolen chattels acquires no title, however innocent he may be, and an innocent holder appropriating or disposing of stolen property is liable for conversion. In the instant case the plaintiff was not seeking exemplary damages but only the value of the automobile at the time of its conversion. Therefore, even though Urban was without knowledge of the theft of the automobile, he was guilty of a conversion, and the plaintiff was entitled to recover irrespective of Urban's good or bad faith, knowledge or ignorance." 239 Ky. at 221, 39 S.W.2d at 220.

The Court concludes that plaintiff is entitled to possession of the diamond and will enter an order authorizing and directing the receiver, Merkley Kendrick Jewelers, Inc., upon receipt of its reasonable charges for service as receiver, to deliver the stone to plaintiff's authorized representative. Any charges which plaintiff is required to pay Merkley Kendrick will be taxed as costs against the defendants.

Since plaintiff has asserted a claim for punitive damages and since there are claims asserted among the defendants, the matter will remain on the Court's docket for further proceedings.