**KIMBERLY & EUROPEAN DIAMONDS, INC., Plaintiffs-Appellees,**

v.

**William F. BURBANK, Edwin Neal, Adeline Bohmer, Defendants,**

**William F. Burbank, Defendant-Appellant.**

No. 81–5565.

United States Court of Appeals, Sixth Circuit.

Argued June 17, 1982.

Decided July 29, 1982.

Dennis R. Carrithers, Francis Bauman, Louisville, Ky., for defendant-appellant.

Richard J. Frockt, Jeffrey B. Ritter, Barnett & Alagia, Louisville, Ky., for plaintiffs-appellees.

Before KEITH, Circuit Judge, and WEICK and PHILLIPS, Senior Circuit Judges.

KEITH, Circuit Judge.

This is an action for conversion brought under the common law of Kentucky. Jurisdiction is found under 28 U.S.C. § 1332(a)(1).

William F. Burbank, defendant-appellant ("Burbank"), appeals a judgment entered by the United States District Court for the Western District of Kentucky in favor of plaintiff-appellee, Kimberly and European Diamonds, Inc. ("Kimberly").[1] 518 F.Supp. 599.

In granting summary disposition, the district court found, *inter alia*, that (1) there exists no genuine dispute as to any material fact and that plaintiff was entitled to recover as a matter of law. *See* Fed.R.Civ.P. 56(c); (2) that the transactions involved here, "sound in tort", and therefore are not subject to provisions of the Kentucky version of the Uniform Commercial Code, Ky. Rev.Stat. § 355.2–403; and (3) that the common law doctrine of estoppel did not bar Kimberly's right to recovery. We agree.

It is undisputed that Kimberly is the original owner of one (1) round, brilliant cut diamond with a weight of 9.96 carats. The question is whether subsequent transactions have caused title to vest in Burbank.

On January 28, 1981, Kimberly mailed the diamond, by certified mail, return receipt requested, to defendant, Adeline Bohmer ("Bohmer"), a resident of Lexington, Kentucky. The diamond, together with a memorandum which set forth the terms and

---

1. Judgment was also entered against defendants Adeline Bohmer and Edwin Neal. However, neither of these defendants have appealed.

conditions of Bohmer's possession, were delivered to Bohmer.

The terms of the agreement which both parties acknowledge are customary throughout the industry provided, *inter alia,* that: 1) at the time of delivery, the diamond was valued at $43,824; (2) that receipt of the diamond constituted acceptance of the stated terms including an agreement to indemnify Kimberly for any and all risks of loss, whether direct or vicarious. The agreement also contained the provision that,

> You [Bohmer] acquire no right or authority to sell, pledge, hypothecate or otherwise dispose of the merchandise or any part thereof, ... by memorandum or otherwise, it being expressly understood that ... no credit is extended with respect to this merchandise. A sale of all or any portion of the merchandise shall occur only if and when we [Kimberly] agree and you shall have received from us a separate invoice.

Bohmer accepted the diamond and thereby agreed to be bound by the terms of the accompanying agreement.

Subsequently, on two separate occasions, Bohmer transferred the diamond to Edwin Neal in violation of the express terms of the agreement.

The first transfer occurred on February 4, 1981. Allegedly, Neal represented to Bohmer that he had a buyer for the diamond and gave her a check for it.[2] Neal returned the diamond. However, the following day, Bohmer again transferred the diamond to Neal. Despite demands, Neal continued in his refusal to return the diamond to Bohmer. Instead, Neal used the diamond as collateral for loans which he obtained from defendant-appellant William F. Burbank.[3]

In the first loan transaction, Burbank agreed to make a loan of $15,000 to Neal, repayable at $17,000. Neal executed a promissory note for that amount, the due date of which was left blank. Burbank took possession of the diamond, which he had appraised at $50,000 as collateral. Burbank returned the stone to Neal when the loan was repaid.

Subsequently, Neal obtained another loan from Burbank. This second loan was in the amount of $20,000. Again Burbank took the diamond as collateral. Neal executed a promissory note, this time for $25,000 payable to Burbank within 10 days. Neal defaulted on the note and several interest bearing extensions which Burbank granted.

On April 15, 1981, Kimberly initiated the instant suit. The complaint alleged common law conversion and sought injunctive relief against Burbank. On April 20, 1981, Burbank was deposed. Thereafter, the district court entered a temporary restraining order against Burbank enjoining him from disposing of the diamond. On May 8, 1981, following a hearing, the court granted a preliminary injunction against Burbank. The court also directed that possession of the diamond be placed with a receiver.

Burbank then filed a joint motion to dismiss the preliminary injunction and the complaint against him. Pursuant to Fed.R. Civ.P. 56, Kimberly filed a motion for summary judgment against all defendants.[4] The district court entered judgment against all defendants in favor of Kimberly on June 9, 1981. Burbank appeals.

At common law, the tort of conversion is extant when a defendant is shown to have deprived another of the latter's right of possession and use of a chattel. *Restatement (Second) of Torts,* § 222A (1965). The tort is further characterized by a defendant's exercise of dominion and con-

---

**2.** On February 16, 1981, Bohmer presented the check to Kimberly's broker in Dallas, Texas. The broker refused to accept the check.

**3.** The court shamefully acknowledges that defendant Burbank is an attorney in Louisville, Kentucky. Mr. Burbank has practiced law since 1952.

**4.** *See supra* note 1. Several defendants have filed cross pleadings. The status of those pleadings is not immediately germane to Burbank's appeal.

trol over the property in question in a manner which is inconsistent with plaintiff's rights. *Mansbach v. Prescott, Ball and Turben*, 598 F.2d 1017, 1027 (6th Cir. 1979). The district court found that each defendant had converted plaintiff's diamond and held each liable as a matter of law.

On appeal, Burbank does not dispute the operation or effect of the law of conversion. Rather, he argues that the district court erred by applying the law of conversion and by failing to apply the Kentucky version of the Uniform Commercial Code ("UCC"), Ky.Rev.Stat. § 355.2–403.[5]

■ Although we recognize that UCC § 2–403 may allow one to pass better title than he has, these facts do not give rise to its operation. *But see Dudley v. Lovins*, 220 S.W.2d 978, 310 Ky. 491 (1949).

It is undisputed that Bohmer told Neal that she did not own the diamond. The agreement under which Bohmer acquired possession expressly reserved title and the power to pass title. Thus, Bohmer had no title, nor did she have authority to pass title to Neal. Consequently, Neal acquired no interest in the stone. Burbank merely obtained naked possession of the diamond from Neal.

■ It is clear that § 355.2–403 is inapplicable. More significantly, even if we were to apply that provision to these facts, Kimberly would prevail. The circumstances surrounding Burbank's acquisition and the manner in which he maintained possession of the diamond are wholly repugnant to that of a bona fide purchaser without knowledge of his transferor's defect in title. Thus, the cases which Burbank cites are not on point.

Burbank is himself an attorney. Yet, he agreed to make a loan to Neal following an initial introduction and the recommendation of an attorney friend. Burbank acknowledges that he had the diamond appraised and learned that its value was more than three times greater than the amount of the first loan. However, Burbank failed to secure satisfactory proof of Neal's ownership. Indeed, there is some dispute concerning whether Burbank made inquiries in this regard. Finally, after Neal defaulted on the second loan Burbank claimed lawful title to the diamond. Thereafter, Burbank secreted the gem in several unusual places including his law office, the pockets of his pants, in a clothes closet, a briefcase and a strong box at a bank. When viewed in the context of the entire sequence of events, we find that only the strong box storage was consistent with lawful ownership.

■ Burbank also argues that Kimberly should be estopped from asserting its ownership interest, if found to exist, against Burbank. In essence, Burbank asserts a principle well established in the law of equity. When one of two innocent parties must suffer a loss, it is he who by his conduct permits the wrongdoer to perpetrate the wrong who must suffer. We reject the application of this principle on two grounds. First, Kimberly's delivery of the diamond to Bohmer as described previously and consistent with the practice of the industry is an insufficient indicia of ownership to indicate the power to convey. Likewise it is insufficient to raise estoppel. Secondly, as Burbank notes "bona fide purchasers are favorites of the law." *United Road Machinery Company v. Jasper*, 568 S.W.2d 242 (Ky. App.1978). For the numerous reasons set out above Burbank cannot be regarded as a bona fide purchaser.

Therefore, we affirm Judge Thomas A. Ballantine Jr.'s decision in favor of Kimberly and against all defendants.

---

**5.** Ky.Rev.Stat. § 355.2–403 provides:

(1) A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though

. . . .

(d) the delivery was procured through fraud punishable as larcenous under the criminal law.