Craig JASPER, d/b/a Creative Touch Jewelry, Appellant

v.

Joyce BLAIR, Appellee

NO. 2014–CA–000204–MR

Court of Appeals of Kentucky.

RENDERED: JUNE 17, 2016; 10:00 A.M.

BRIEF AND ORAL ARGUMENT FOR APPELLANT: Darrell L. Saunders, Corbin, Kentucky

BRIEF AND ORAL ARGUMENT FOR APPELLEE: Tommie L. Weatherly, London, Kentucky

BEFORE: COMBS, D. LAMBERT, AND TAYLOR, JUDGES.

*OPINION*

TAYLOR, JUDGE:

Craig Jasper, d/b/a Creative Touch Jewelry, brings this appeal from a January 24, 2014, Trial Order and Judgment of the Whitley Circuit Court granting judgment in favor of Joyce Blair and awarding compensatory damages of $15,000. We affirm.

In early 2008, Joyce Blair's home was burglarized and several items of jewelry were taken. Some of the jewelry was subsequently sold to a local jewelry shop and a pawn shop. Relevant to this appeal, on January 29, 2008, Steven Caudill sold one of Blair's rings to Creative Touch Jewelry for $500. Shortly after the purchase, Creative Touch disassembled the diamond ring and sold the gold as scrap; the loose diamonds were retained. Following an investigation, Caudill was arrested and charged with the burglary. Caudill even-

tually pleaded guilty to three counts of burglary in the second degree. By judgment entered September 26, 2008, Caudill was sentenced to ten-years' imprisonment and was ordered to pay restitution to Blair.

On February 10, 2009, Blair filed a complaint against, *inter alios,* Craig Jasper, d/b/a Creative Touch Jewelry, alleging conversion of the diamond ring. Blair had previously requested the return of her diamond ring; however, Creative Touch could only return the loose diamonds it had retained. Blair sought recovery of compensatory and punitive damages.

A two-day jury trial in the Whitley Circuit Court began on January 15, 2014. At the close of all the evidence, the court concluded "as a matter of law" that Jasper was liable to Blair for converting the diamond ring and presumably directed a verdict for liability only.[1] The trial court then submitted the issue of damages to the jury. The jury ultimately awarded Blair $15,000 in compensatory damages against Jasper for conversion of the diamond ring. The jury declined to award punitive damages. This appeal follows.

Jasper contends on appeal that there was a complete absence of evidence that he personally converted Blair's diamond ring and that Blair failed to establish her damages in accordance with applicable law. Specifically, Jasper asserts that the trial court erred by directing a verdict against him for conversion of Blair's diamond ring. Rather, Jasper claims that he was entitled to a directed verdict in his favor upon Blair's conversion claim. Jasper argues the evidence presented demonstrated that the corporation, The Creative Touch of Corbin, Inc., purchased the diamond ring

from Caudill and thereby converted it but that he personally was not liable. And, Jasper points out that Blair did not name the corporation as a party to the action. Alternatively, Jasper contends that if a conversion occurred, it was by his ex-wife and business partner, Teresa Carpenter. In support thereof, Jasper asserts that Carpenter actually purchased the ring from Caudill, issued the receipt for the purchase, and paid Caudill for the ring. Accordingly, our review will first focus on whether the trial court erred by directing a verdict of liability for conversion and denying Jasper's motion for directed verdict.

A directed verdict is proper when a reasonable juror could only conclude that the moving party was entitled to a verdict in his favor. Kentucky Rules of Civil Procedure 50.01; *Lee v. Tucker,* 365 S.W.2d 849 (Ky. 1963). And, when considering a motion for directed verdict, the evidence and all reasonable inferences therefrom must be viewed in a light most favorable to the nonmoving party. *Id.*

In *Bierman v. Klapheke,* 967 S.W.2d 16 (Ky. 1998), the Kentucky Supreme Court established a strict standard of review for appellate courts in regard to rulings by trial courts upon a motion for directed verdict. The Court stated:

When engaging in appellate review of a ruling on a motion for directed verdict, the reviewing court must ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party. Once the issue is squarely presented to the trial judge, who heard and considered the evidence, a reviewing court cannot substitute its

---

1. The parties acknowledge in their respective briefs that the trial court granted a directed verdict for liability but neither recites the exact location in the record where the direct-ed verdict was granted. The trial order and judgment does not reflect the directed verdict being granted, although the jury instructions reflect that directed verdict was granted.

judgment for that of the trial judge unless the trial judge is clearly erroneous.

In reviewing the sufficiency of evidence, the appellate court must respect the opinion of the trial judge who heard the evidence....

*Id.* at 18 (citations omitted).

 Conversion is an intentional tort and is generally defined as "the wrongful exercise of dominion and control over the property of another." *Jones v. Marquis Terminal, Inc.,* 454 S.W.3d 849, 853 (Ky. App. 2014) (citations omitted). In this Commonwealth, the elements of the tort of conversion are set forth in *Jones* as follows:

(1) the plaintiff had legal title to the converted property;

(2) the plaintiff had possession of the property or the right to possess it at the time of the conversion;

(3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment;

(4) the defendant intended to interfere with the plaintiff's possession;

(5) the plaintiff made some demand for the property's return which the defendant refused;

(6) the defendant's act was the legal cause of the plaintiff's loss of the property; and

(7) the plaintiff suffered damage by the loss of the property.

*Jones,* 454 S.W.3d at 853 (quoting *Ky. Ass'n of Counties All Lines Fund Trust v. McClendon,* 157 S.W.3d 626, 632 n. 12 (Ky. 2005)). We shall examine the above elements of conversion in relation to the evidence introduced at trial and determine whether the trial court properly rendered a directed verdict upon Jasper's liability for the conversion of the diamond ring.

The record reveals that Blair presented undisputed evidence during trial establishing elements (1), (2), (5) and (7) of the tort of conversion. Blair testified that she possessed legal title to the diamond ring and had the right to possess the ring when it was converted. Blair also testified that she demanded return of the diamond ring and suffered damage as a result of the conversion. This evidence was uncontradicted; thus, no reasonable juror could differ upon elements (1), (2), (5), and (7) of the tort of conversion. We shall now analyze elements (3), (4) and (6).

 Under element (3), it must have been demonstrated that Jasper exercised control over Blair's ring, thereby denying her the right to use and enjoy the ring. Jasper testified on his own behalf and specifically stated that he agreed to purchase the diamond ring from Caudill. After Jasper purchased the diamond ring, the ring was dissembled, and the gold was sold as scrap. Based upon Jasper's own testimony, it is clear that Jasper exercised dominion and control over the diamond ring and that such control denied Blair the right to use and enjoy the ring as required by element (3). Therefore, a reasonable juror could only find that Jasper exercised dominion over Blair's ring which operated to deny Blair her right to use and enjoy the ring.

 As to element (4), a claim for conversion requires that Jasper "intended to interfere" with Blair's possession of the property. However, the intent required is merely "the intent to exercise control over the property." 13 David J. Leibson, *Kentucky Practice—Tort Law* § 8.2 (2015 ed.). It is irrelevant whether Jasper acted in good faith believing he had the right to control the property as "wrongful intent is not an essential element" of the tort of

conversion. *See* 13 David J. Leibson, *Kentucky Practice—Tort Law* § 8.2 (2015 ed.); *see also Urban v. Lansing's Adm'r*, 239 Ky. 218, 39 S.W.2d 219 (1931). Simply put, the proper inquiry is whether Jasper intended the act which resulted in his control over the ring. Again, Jasper's own testimony upon this element is controlling. Jasper testified that he agreed to purchase the diamond ring from Caudill. Thus, a reasonable juror could only find that Jasper intended to purchase the ring, thus satisfying element (4) of the tort of conversion.

■ As to element (6), it must have been demonstrated that Jasper's act was the legal cause of Blair's loss. In Kentucky, legal causation has been defined by the substantial factor test as set forth in the *Restatement (Second) of Torts*, § 431 cmt. a (1965). *Deutsch v. Shein*, 597 S.W.2d 141 (Ky. 1980) *abrogated by Osborne v. Keeney*, 399 S.W.3d 1 (Ky. 2012)). The *Restatement (Second) of Torts* § 431 essentially provides that an "actor's negligent conduct is a legal cause of harm to another if his conduct is a substantial factor in bringing about the harm." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 91–92 (Ky. 2003); *see also Moloney v. Becker*, 398 S.W.3d 459 (Ky. App. 2013). "Substantial factor" has been used to indicate that defendant's conduct had "such an effect in producing the harm as to lead reasonable men to regard it as a cause...." *Pathways, Inc.*, 113 S.W.3d at 92. In the case *sub judice*, it is clear that Jasper's purchase of the diamond ring was a substantial factor in causing Blair to suffer loss of the ring, and no reasonable juror could have found otherwise. Given the totality and sufficiency of the evidence presented on the conversion issue, we cannot conclude that the trial judge was erroneous in directing a verdict for liability against Jasper for conversion.

Jasper next contends that Blair failed to introduce sufficient evidence establishing her damage claim for the conversion of the ring. Jasper specifically asserts that the traditional measure of damages for an action in conversion, the fair market value at the time of the conversion, is not appropriate in this case. Jasper argues that the forty-one diamonds from the ring were returned to Blair; thus, the proper measure of damages is the fair market value of the ring at the time of the conversion minus the value of the loose diamonds returned to Blair. Jasper contends that Blair failed to submit evidence demonstrating the fair market value of the diamonds returned to her and, thus, failed to adequately establish her damages.

■ It is well-established that the measure of damages for a claim of conversion is generally the fair market value of the property at the time of conversion. *Nolin Prod. Credit Ass'n v. Canmer Deposit Bank*, 726 S.W.2d 693 (Ky. App. 1986). And, the burden is upon plaintiff to prove the fair market value of the property at the time of conversion. However, if the converted property is returned to plaintiff and plaintiff accepts return, the burden is then upon defendant to prove the value of the property at the time it is returned to plaintiff. 18 Am.Jur.2d *Conversions* § 136 (2015); *see also Urban*, 39 S.W.2d 219.

■ In this case, Blair presented by deposition the testimony of her expert, Bruce Milkins, a jewelry appraiser from Michigan. Milkins testified that the value of the diamond ring at the time of conversion was $28,140. He further testified that the value of the ring in its entirety was greater than its component parts. At this point in the proceedings, we believe it became Jasper's burden to introduce evidence regarding the value of the diamonds returned to Blair. Jasper is also in the

jewelry business and as a gemologist was qualified to value the diamonds. He opted not to give an opinion of their value at trial nor submit any rebuttal evidence on this issue. The jury heard testimony regarding the return of the diamonds and was instructed on the same. The damage award of $15,000 was well within the parameters of the instructions and evidence presented. Therefore, we perceive no error in the denial of Jasper's motion for directed verdict or the jury award of damages on the conversion claim.

For the foregoing reasons, the Trial Order and Judgment of the Whitley Circuit Court is affirmed.

COMBS, JUDGE, CONCURS.

D. LAMBERT, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

D. LAMBERT, JUDGE, DISSENTING.

I write separately to express my disagreement with the holding of the majority. While I believe the majority is correct in their assessment of the law relating to the issues of this case, the application of that law to the facts of this case, in my opinion, demands the opposite result. I would therefore reverse the trial court's grant of a directed verdict in favor of Blair.

Even taking the evidence in the light most favorable to the prevailing party, as required by *Bierman v. Klapheke*, 967 S.W.2d 16 (Ky. 1998), the evidence is not so dispositive as to conclude as a matter of law that there is no possibility of a differing opinion in the mind of a reasonable juror.

The record indicates that Jasper is but a shareholder in the corporation, Creative Touch Jewelry. He is not a sole proprietor doing business under an assumed name. The majority places emphasis on the fact that Jasper spoke to the thief, Caudill, when Caudill first came into Jasper's place of business about selling the ring. The evidence is unequivocal that Jasper examined the ring, and that the ring was purchased and disassembled. The majority's opinion, however, diminishes a crucial fact, Caudill left the store without completing the transaction, and then later returned to sell the ring to another, entirely different, agent of the corporation.

To hold Jasper personally liable for the intentional tort of conversion when he was not even present for the transaction flies in the face of the very purpose behind the statutes allowing the creation of limited liability business entities. Moreover, the proof does not evince sufficient justification for piercing the corporate veil. Jasper has not been shown to have been so dominant a driving force in the business as to render recognition of its separate identity a sanction of fraud or a promotion of injustice. *Inter–Tel Technologies, Inc. v. Linn Station Properties, LLC*, 360 S.W.3d 152 (Ky. 2012).

I further disagree with the majority's conclusion that the evidence proved all of the elements of conversion necessary for recovery. Specifically, the evidence does not satisfy the sixth element: whether Jasper's actions amounted to legal cause. If, as the majority reasoned, the legal cause of harm is the action of one whose conduct is a substantial factor in bringing about that harm (*see Pathways, Inc. v. Hammons*, 113 S.W.3d 85), the most culpable party is Caudill, the thief, without whose actions none of the events leading to the destruction of Blair's jewelry would have taken place. The jury heard evidence not only that Caudill had sold Blair's jewelry to other individuals besides those doing business at Creative Touch, but also that very little of her jewelry collection had

been recovered. That some of the jewelry was disposed of by Creative Touch does not diminish Caudill's primary causative role in the tort. The majority notes that Jasper's purchase of the ring was a substantial factor, but the evidence clearly shows that Jasper was not the party who completed the transaction with Caudill. For that reason, I believe an unresolved issue of material fact was presented, and the trial court impermissibly usurped the role of the jury in resolving that factual dispute.

I also disagree with the majority's position on the issue of damages: that the jury's verdict of $15,000 was within the evidence and the instructions. Case law traditionally measures damages for conversion at the fair market value of the converted property at the time of the conversion. *Nolin Prod. Credit Ass'n v. Canmer Deposit Bank*, 726 S.W.2d 693 (Ky. App. 1986). The jury heard testimony that the fair market value of the ring was approximately $28,000. The same witness who provided that valuation also testified that the majority of that value came from the value intrinsically attached to the stones, which were returned to Blair.

When the property is returned to the owner after conversion, the defendant is entitled to a mitigation of damages. *Louisville & Nashville R.R. Co. v. Johnson*, 226 Ky. 322, 10 S.W.2d 1104 (1928). While Jasper offered no proof of the fair market value of the stones on their own, proof was presented to the jury that those stones comprised the majority of the ring's monetary value, and they were returned to Blair. Despite this proof, the jury returned a verdict holding Jasper liable for more than half of the fair market value of the ring. This results in a windfall for Blair. The jury instructions did not adequately account for any mitigation to which Jasper might be entitled.

For all of the foregoing reasons, I find error in the judgment entered by the trial court. I respectfully dissent from my colleagues on this panel, as I would reverse the verdict based on those errors.