Melody Ann MASTIN, Appellant,

v.

LIBERAL MARKETS; Travelers Insurance Company; John C. Wells (Successor to Thelma Stovall), Secretary of Labor and Custodian of the Special Fund; and Kentucky Workers' Compensation Board, Appellees.

Supreme Court of Kentucky.

July 5, 1984.

E. André Busald, Florence, for appellant.

Mark W. Howard, Lionel A. Hawse, Lexington, for appellee, Liberal Markets & Travelers.

Denis S. Kline, Louisville, for appellee, Thelma Stovall.

J. Scott Getsinger, Frankfort, for appellee, Workers' Compensation.

LEIBSON, Justice.

Appellant, Melody Ann Mastin, seeks to reverse a decision of the Court of Appeals directing repayment of certain workers' compensation benefits which she received

from the appellees. She suffered an illness resulting from inhaling an insecticide which was being sprayed in the area of her employment. She was working for Liberal Markets and the insecticide was being sprayed by Rose Exterminators, Inc.

The injury had its inception on September 26, 1978. In December 1978 she filed a claim before the Workers' Compensation Board. In May 1979 she and her husband filed a separate products liability claim in Kenton Circuit Court against three defendants, Rose Exterminators, Virginia Chemicals, Inc., and Prentiss Drug & Chemical Co., Inc.

In March 1981 she and her husband made a partial settlement of the circuit court action, accepting payment of $50,000 for a release of all claims against Rose Exterminators, Inc., "SPECIFICALLY RESERVING," their claims against other defendants.

The release evidencing this transaction recited the following:

"The aforementioned Fifty Thousand ($50,000.00) shall be allocated as follows:
A) To Melody Mastin

1. For lost wages and destruction of earning capacity $ 5,000.00
2. For past, present and future medical expenses 5,000.00
3. For physical and mental pain and suffering 30,000.00

B) To Phillip Mastin
4. For loss of consortium 10,000.00
$50,000.00"

Four weeks after Mastin's $50,000 settlement with Rose Exterminators, the Workers' Compensation Board entered an award against the appellees, Liberal Markets, Travelers and the Special Fund, for 102 weeks total temporary disability to be followed by payments for 35% permanent partial disability, plus all related medical expenses. The Board also awarded a $6,500 attorney's fee for Ms. Mastin's attorney in the worker's compensation action. Travelers commenced payments pursuant to the Board's award.

Ten months later the appellees learned of the settlement between Ms. Mastin and Rose Exterminators, suspended further payments of worker's compensation benefits and demanded immediate reimbursement of all sums previously paid pursuant to the worker's compensation award. These payments were as follows:

| $7,255.56 | Total Temporary Disability (9/26/78—9/9/80) |
| 1,772.39 | Permanent Partial Disability (9/10/80—2/4/82) |
| 596.50 | Interest on Payments Due at the Time of the Award |
| 15,532.95 | Medical Expenses |
| 6,500.00 | Employee's Attorney's Fee |
| $30,657.10 | |

Ms. Mastin then filed the present suit, which started as an enforcement action to require these appellees to pay off the balance of the worker's compensation award. Appellees filed a response claiming that Ms. Mastin had obtained a double recovery in violation of KRS 342.700 (Remedies When Third Party is Legally Liable) and a counterclaim for reimbursement of the amounts previously paid pursuant to the worker's compensation award.

The case was submitted to the trial court to decide without a jury on the basis of the pleadings, the record from the Workers' Compensation Board, and an agreed statement of facts. The trial court entered findings and a judgment holding that the appellees were entitled to a "subrogation credit" which should be computed as follows:

| $50,000.00 | Civil Suit Settlement Received by Plaintiff |
| – 16,666.00 | Plaintiff's Attorney's Fee in Her Civil Action |
| $33,334.00 | Net |

The trial court then held that this was a "front-end" credit against future payments of worker's compensation, meaning that commencing from the time the appellees discovered the payment from Rose Exterminators the credit would be set off against unpaid worker's compensation benefits as they would become due. The trial court denied the appellees any right of restitution for the sums already paid Ms. Mastin.

Both sides appealed. Ms. Mastin claimed that KRS 342.700 does not apply to the sum paid to her by Rose Exterminators; that this was not a recovery from a third party legally liable triggering application of KRS 342.700, but only a partial payment or an advanced payment; and that legal liability remained an undecided question until all claims in the products liability case had been disposed of. She claimed she is entitled to keep the worker's compensation benefits which she has been paid and to continue to enforce the worker's compensation award until her products liability case is fully adjudicated. On the other hand the appellees, Liberal Markets, Travelers and the Special Fund, claimed that they are entitled not only to a "front-end" credit from the date they discovered the settlement with Rose Exterminators and suspended future payments, but also to a common law judgment against Ms. Mastin for immediate repayment of benefits they paid after Ms. Mastin received the $50,000 settlement from Rose Exterminators but before the appellees learned of it.

The Court of Appeals affirmed the appellees' right to a subrogation credit holding that the settlement with Rose Exterminators was a resolution of legal liability within the meaning of KRS 342.700, but reversed the trial court's decision that the credit can be applied only against future payments. The Court of Appeals "remanded with instructions to enter a common law judgment against Ms. Mastin for worker's compensation benefits received and to direct suspension of further benefits until subrogation of the entire $33,334.00 settlement from Rose Exterminators is effected." [1] Ms. Mastin then petitioned this Court for discretionary review.

The issues presented by this appeal are as follows:

1) Is the payment from Rose Exterminators a recovery from a third party legally liable triggering subrogation rights under KRS 342.700?

2) If so, is appellees' subrogation limited to a credit against future payments or are appellees entitled to restitution from Ms. Mastin for amounts previously paid?

3) Are appellees entitled to credit against the entire net amount after deduction of attorney's fee ($33,334) or is subrogation limited to those elements of Ms. Mastin's recovery from Rose Exterminators which duplicate elements (disability benefits and medical expense) for which worker's compensation benefits have been paid? And, what is the appropriate method for allocating a limited recovery?

1) IS THE PAYMENT FROM ROSE EXTERMINATORS A RECOVERY FROM A PARTY LEGALLY LIABLE TRIGGERING SUBROGATION RIGHTS UNDER KRS 342.700?

KRS 342.700, "Remedies when third party liable," subsection 1, provides in pertinent part:

"Whenever an injury for which compensation is payable under this chapter has been sustained under circumstances creating in some other person than the employer a legal liability to pay damages, the injured employe may either claim compensation or proceed at law by civil action against such other person to recover damages, or proceed both against the employer for compensation and such other person to recover damages, but he shall not collect from both .... If compensation is awarded under this chapter, the employer, his insurance carrier, the special fund, and the uninsured employer's fund, or any of them, having paid the compensation or having become liable therefor, may recover in his or its own name or that of the injured employe from the other person in whom legal liability for damages exists, not to exceed the indemnity paid and payable to the

---

1. No one questions that the portion of the $50,000 recovery from Rose Exterminators which was deducted as an attorney's fee is an expense incident to effecting her recovery from Rose Exterminators and not subject to restitution. *Stacy v. Noble*, Ky., 361 S.W.2d 285 (1962); *Southern Quarries & Contracting Co. v. Hensley*, 313 Ky. 640, 232 S.W.2d 999 (1950).

injured employer, less the employe's legal fees and expense."

■ The first question is when does "legal liability to pay damages" arise? Rose Exterminators has settled its liability, but Ms. Mastin's tort action is still an open case as to remaining defendants. She argues that because ultimately it may be determined by jury verdict and judgment that these other defendants, not Rose Exterminators, were the parties primarily or entirely at fault, legal liability has not yet been determined. This type of argument is sound where a third party possibly liable settles a common law action brought by an employee and then seeks reimbursement for the settlement from the employer or some other person in an action for contribution or indemnity. One who has not agreed to a settlement is not foreclosed by it from contesting liability. *Ashland Oil & Refining Co. v. General Telephone Co.,* Ky., 462 S.W.2d 190 (1970). But it is unsound in the present circumstances. Here the appellees are the employer, its insurance carrier, and the Special Fund, subrogated by statute to the payments the employee has received from the alleged tortfeasor. Their rights derive from the employee's right to payment and are a corollary to the employee's right to payment. The parameters of "legal liability" under KRS 342.700 require only that the third party tortfeasor "could have been compelled at law to pay" and the settlement itself is sufficient evidence of that fact. *Whitney Transfer Co. v. McFarland,* 283 Ky. 200, 138 S.W.2d 972, 976 (1940).

As to those elements of Ms. Mastin's recovery from Rose Exterminators which were also elements "for which compensation is payable under" the Workers' Compensation law, she had a right to proceed against both the third party tortfeasor and her employer, but she "shall not collect from both." KRS 342.700(1). After being paid by Rose Exterminators, to the extent that she accepted worker's compensation benefits that duplicated payment, she has collected from both. It follows that for those items for which she has obtained

double recovery, the appellees are entitled to statutory subrogation "not to exceed the indemnity paid and payable to the injured employe, less the employe's legal fees and expense." KRS 342.700(1).

2. IS APPELLEES' SUBROGATION LIMITED TO A CREDIT AGAINST FUTURE PAYMENTS OR ARE APPELLEES ENTITLED TO RESTITUTION FROM MS. MASTIN FOR AMOUNTS PREVIOUSLY PAID?

■ Ms. Mastin contends that any credits which are to be allowed to the appellees apply against the last payments ("rear-end" benefits) to which she is entitled under the worker's compensation award; that we should apply a mathematical computation using the life expectancy tables to establish an ending date and figure backwards from that point as opposed to giving credit at the front-end of the award. Her theory is that KRS 342.700 only entitles the employer to reduce its future liability and not to a subrogation credit against present liability. Ms. Mastin relies upon the language of *Southern Quarries v. Hensley,* supra p. 10, [footnote] in support of her position.

There is nothing in the statute so limiting. On the contrary the statute says the employee "shall not collect from both" and Ms. Mastin has done so. The problems that arise from applying *Southern Quarries* to the present case are twofold. *Southern Quarries* was decided under a Workers' Compensation law where the number of future weekly benefits was fixed by statute, whereas Ms. Mastin received an open-end award payable indefinitely. Next, in *Southern Quarries* the claimant had not yet received payment of the worker's compensation award, so there was no question of double recovery, only a question as to whether the employer's credit should apply at the front-end or at the far end of future weekly payments which would be due the employee. The rationale of *Southern Quarries* does not apply to that part of the award where the Workers' Compensation statute provides for open-

end awards. In such instances we cannot arrive at an end date by using the statute, but only by adding to the statute to arbitrarily assess an end date.

This same reasoning does not apply to the $6,500 award by the Workers' Compensation Board for attorney's fees. Here there is statutory provision covering the method of computation of the attorney's fee and the method for credit against the employee's award. In such circumstances the language of *Southern Quarries* is still viable. KRS 342.320(2) directs payment of the award for the claimant's attorney's fees as follows:

> "The entire attorney's fee in a lump sum shall be paid directly to the attorney of record, and the board in allowing or approving an attorney's fee, as provided in this section, shall order the payment of same directly to the attorney, *commuting sufficient of the final payments* of compensation payable under the award to a lump sum for that purpose." (Emphasis added).

This statute was not changed when the statutory scheme was amended to allow for open-end awards. In *Livingston County Farm Supply v. Spencer*, Ky., 593 S.W.2d 76 (1979), we upheld the constitutionality of this statutory arrangement. The appellees' subrogation rights are statutory and limited to what the statute provides. Thus, we sustain Ms. Mastin's position that appellees are not entitled to a front-end credit for their payment of her worker's compensation attorney's fees.

For the same reason, appellees' statutory rights of subrogation cannot attach to that portion of her recovery from the third party tortfeasor, Rose Exterminators, expressly excluded from such subrogation by the statutory phrase, "less the employe's legal fees and expense" in effecting recovery from the third party tortfeasor. KRS 342.700(1). The trial court made allowance for the attorney's fee. It exempted $16,666 from the award of statutory subrogation, which is the portion of the recovery from Rose Exterminators representing Ms. Mastin's attorney's fee in effecting the recovery. But Ms. Mastin was also entitled to deduct a share of her legitimate expenses incurred in connection with effecting the recovery from Rose Exterminators in such proportion as the elements of her settlement subject to statutory subrogation bear to the elements of her settlement not subject to statutory subrogation.

3. IS APPELLEES' SUBROGATION LIMITED TO THOSE ELEMENTS OF MS. MASTIN'S RECOVERY FROM ROSE EXTERMINATORS WHICH DUPLICATE ELEMENTS FOR WHICH WORKERS' COMPENSATION BENEFITS HAVE BEEN PAID? AND, WHAT IS THE APPROPRIATE METHOD FOR ALLOCATING A LIMITED RECOVERY?

This question has been answered in the affirmative in *Hillman v. American Mutual Liability Ins. Co.*, Ky., 631 S.W.2d 848 (1982).

In *Hillman* the employee effected a recovery from a third party tortfeasor which was not sufficient to compensate for both the elements of her damages also covered by workers' compensation and the elements of her damages not so covered. We held:

> "Although compensation benefits are calculated on the basis of lost earnings, the percentage of disability reflects the loss of future earnings and earning power as well. To the extent, therefore, that the claimant recovers these items of damage against a third-party tortfeasor, the compensation carrier is subrogated and, we believe, is entitled to be reimbursed before the claimant collects. To the extent, however, that the recovery against the tortfeasor represents items of damage (e.g., pain and suffering) *not* covered by workers' compensation, the carrier has no right against that recovery at all." 631 S.W.2d at 850. (Emphasis original)

In the *Hillman* case the jury provided an itemized award, so that those elements of the award as to which the dual recovery

doctrine would apply were clearly evident. Since the recovery in the present case was by settlement rather than by jury award, the recovery has not been itemized by an independent, impartial trier of fact. But the recovery has been itemized by the Mastins and Rose Exterminators in the release they entered into at the time of payment. Ms. Mastin claims that this itemization should be given the same force as would be the case with a jury verdict. On the other hand, appellees claim that this allocation should be disregarded entirely.

Ms. Mastin's theory is unsound. In *Ashland Oil & Refining Co. v. General Telephone Co., supra* p. 11, the Refining Co. settled a common law action brought against it by an employee of the Telephone Co., and then sued the Telephone Co. for indemnity. We held that the settlement with the employee was not conclusive of the question of legal liability as to the Telephone Co. because the Telephone Co. was not a party to the action between its employee and the Refining Co. For the same reason that the Telephone Co. in the *Ashland Oil* case was not foreclosed from a court determination by an out of court settlement to which it was not a party, so also in the present case these appellees cannot be foreclosed by an allocation of items of damages to which they were not parties.

■ But appellees' theory is equally unsound. Ms. Mastin and Rose Exterminators did nothing illegal or fraudulent in seeking to make an allocation of the $50,000 paid in settlement among the various items of damages which are covered by the settlement. There is no reason, legal or equitable, for disturbing that allocation, unless it is unreasonable. *Stacy v. Noble*, Ky., 361 S.W.2d 285 (1962), relied on by appellees, is inapposite. In *Stacy*, the entire net amount after attorney's fees was held subject to the employer's right of statutory subrogation, but that was because there was *no* previous allocation between compensable and noncompensable elements of recovery.

■ The appellees are entitled to a fair and impartial decision in this action as to the correct amount for each element of damages for which the Mastins seek recovery at common law and to an allocation between those elements subject to statutory subrogation and those not so subject. They are entitled to have the case remanded to the trial court to decide the proper amount which should be awarded Ms. Mastin in damages for each of the various elements of damages specified in the release evidencing the transaction between the Mastins and Rose Exterminators. They are entitled to have such allocation made initially without regard to prospects for obtaining from others the payment of money necessary to pay for the various elements of damages involved. Then they are entitled to subrogation credit against those elements of damages which duplicate worker's compensation benefits, viz.: medical expenses, lost wages and impairment or destruction of earning power. As to these elements, less their proportionate share of attorney's fees and expenses incurred in effecting the recovery from Rose Exterminators, the appellees have immediate entitlement by statutory subrogation as soon as the facts can be determined.

■ The Mastins claim that the amount paid by Rose Exterminators was a partial payment, not representing the full amount of her damages. Indeed, the release is designated a partial payment and both the full amount of damages and the further liability of other tortfeasors remains open. It may be that an independent, impartial trier of fact would consider each element of the Mastins damages three times the amount of the settlement as the Mastins claim. Or it may be that no additional damages are awarded or recoverable, or that no one else is found liable. In such circumstances, the allocation between Ms. Mastin and the appellees should be proportional. The remainder of the holding in *Hillman v. American Mutual, supra* p. 12, would then become applicable. There we held that:

"Since there is not enough to pay the amount of the judgment, the claimant and the carrier should share the amount recoverable ($25,000.00) pro rata, as between the portion of the judgment that is subject to subrogation ($302,562.00) and the portion that is not ($530,000), or: Claimant—63.6% and Carrier—36.4%."

On the other hand it may be that future recovery in the common law action still pending between the Mastins and third parties will provide an amount sufficient to cover in full both those elements of damages as to which the appellees are entitled to reimbursement by reason of statutory subrogation and those elements of damages as to which the Mastins are entitled to recovery free of statutory subrogation.

This case is unusual because the workers' compensation award was made and $24,560.90 in medical and disability benefits paid after the settlement with Rose Exterminators had taken place but without knowledge of that occurrence. Ordinarily the Workers' Compensation Board's award specifies both the amount of credit that shall be given to the employer because of a recovery previously obtained by the employee from a third party and the manner in which the credit shall be taken.

■ In the special circumstances of this case, Ms. Mastin erroneously believed that the settlement with Rose Exterminators did not trigger the subrogation right provided in KRS 342.700. She intended that this partial payment from Rose Exterminators would be considered only as an advance payment pending determination of total damages and legal liability as to all defendants in the continuing common law action. Nevertheless, these appellees were entitled to immediate statutory subrogation as to such amount of her settlement as duplicate worker's compensation benefits. The appellees have overpaid to this extent and are entitled to restitution as soon as the trial court can decide the factual questions underlying the amount subject to restitution. cf. *City of Louisville v. Burch*, Ky.App., 611 S.W.2d 532 (1981).

This restitution should be provided by a common law judgment against Ms. Mastin for those amounts paid to her by the appellees which duplicate elements included in her settlement with Rose Exterminators, after attorneys fees and expenses, and in proportion to the amount allocated for elements not subject to statutory subrogation. In the event of future recovery from others potentially liable in Ms. Mastin's products liability case, the appellees are entitled to subrogation credited in accordance with the principles outlined in this opinion.

■ Ms. Mastin claims that she is entitled to an award for her attorney's fee in the present action because she brought it as a suit for enforcement of her award from the Workers' Compensation Board. KRS 342.310 provides:

"Court may assess cost of unreasonable proceedings.—If the board or any court before whom any proceedings are brought under this chapter determines that such proceedings have been brought, prosecuted or defended without reasonable ground, it may assess the whole cost of the proceedings upon the party who has so brought, prosecuted or defended them."

It is doubtful that the term "whole cost" includes attorney's fees. *Federal Ins. Co. v. West*, Ky.App. 628 S.W.2d 632 (1981). But in any event, assessment pursuant to KRS 342.310 is contingent upon a finding that the employee was forced to bring, prosecute or defend an action "without reasonable ground." Here the appellees' actions in suspending further payments in the circumstances could not be classified as groundless. Indeed, as this opinion specifies, in some respects they have merit.

■ One final matter remains to be addressed. Appellees Liberal Markets and Travelers Insurance Co. failed to file their Appellee's Brief within the time specified in CR 76.12(2)(a). The explanation subsequently furnished when their brief was tendered was interoffice "miscommunication." Their motion to file their brief late was passed to the merits. Although their explanation was unsatisfactory and is not ac-

cepted, in the particular circumstances of this case their arguments were preserved by reason of the brief filed on behalf of appellee, the Special Fund. For this reason none of the penalties provided in CR 76.-12(8)(c) for appellees' failure to file within the time allowed are appropriate to the situation. We have permitted their brief to be filed.

With respect to both the trial court and the Court of Appeals, they have been affirmed in part and reversed in part. We remand this case to the trial court for further proceedings in conformity with this opinion.

All concur.