**Robert BIERMAN and Joyce Bierman, Appellants Cross–Appellees,**

v.

**William KLAPHEKE II, Appellee Cross–Appellant.**

Nos. 96–SC–1086–DG, 97–SC–710–DG.

Supreme Court of Kentucky.

April 16, 1998.

As Amended May 8, 1998.

Matthew B. Troutman, Louisville, for Appellants Cross–Appellees.

Reginald L. Ayers, Bell, Orr, Ayers & Moore, Bowling Green, for Appellee Cross–Appellant.

WINTERSHEIMER, Justice.

This appeal is from a decision of the Court of Appeals overturning a jury verdict in a legal malpractice action. The jury awarded Robert Bierman a total of $109,518.29 in compensatory and punitive damages. The Court of Appeals struck down all but $4,980.35 of the compensatory award.

The questions presented are whether the Court of Appeals exercised the proper standard of review and made the proper determination on appeal; whether a directed verdict should have been granted because Bierman was fully compensated for all of his damages; whether the Court of Appeals applied the correct law holding that Klapheke was entitled to a directed verdict as to compensatory damages; whether the Court of Appeals was correct in holding that Klapheke was entitled to a directed verdict dismissing the claim for punitive damages; and on cross-appeal, whether it was error for the trial judge to permit testimony of a sitting Administrative Law Judge.

Bierman was injured in a work-related automobile accident when his vehicle was hit in the rear by a vehicle operated by Richard Duncan. In June of 1989, Bierman retained Klapheke to represent him and to prosecute a personal injury claim. Although Klapheke undertook the representation of Bierman, he never filed a workers' compensation claim or pursued payment of the remaining PIP benefits to which Bierman was entitled. Klapheke did not file a civil tort action against Duncan and his employers until September of 1991. In May of 1993, Klapheke obtained leave of court allowing him to amend the complaint in the tort claim, both to correct an error in the identification of Duncan's employers and to assert a claim against those two individuals. In July of 1993, after learning that Klapheke had been less than diligent in pursuing his claim, Bierman discharged him as his counsel.

In 1993, Bierman's new attorney filed the malpractice suit claiming that the pending tort action, the workers' compensation claim and the claim for the balance due as PIP benefits were all barred by the statute of limitations because of the negligence of Klapheke in failing to act promptly. It was also

alleged that the loss of consortium claim of Joyce Bierman arising from the same accident was barred by limitations as a result of the negligence of Klapheke. The Biermans sought both compensatory and punitive damages.

The questions presented here are complicated by the fact that the collision was work related, thereby creating both third-party legal liability for damages in tort, and legal liability of Bierman's employer for workers' compensation. KRS 342.700(1) provides that although the injured party may claim both compensation benefits from the employer and tort damages from a third party, "he shall not collect from both."

The Court of Appeals ruled that the alleged ethical violations by the attorney in misrepresenting certain facts to the Biermans was not sufficient to justify an award of punitive damages pursuant to KRS 411.186 because the representation and untruths occurred after the attorney negligently permitted the statute of limitations to expire. The Court of Appeals panel also stated that there was no proof that the attorney intended to cause harm to the Biermans by allowing the statute to run. The Court of Appeals believed that the proof only showed that once the attorney had negligently let the time run, he tried to cover up the fact in order to protect his own interests. Both sides sought discretionary review which was granted by this Court.

## I. Standard of Review

The proper standard of review by the Supreme Court is set out in *NCAA v. Hornung*, Ky., 754 S.W.2d 855 (1988), which states that when an appellate court is reviewing evidence supporting a judgment entered upon a jury verdict, the role of an appellate court is limited to determining whether the trial court erred in failing to grant the motion for a directed verdict. All evidence which favors the prevailing party must be taken as true and the reviewing court is not at liberty to determine credibility or the weight which should be given to the evidence, these being functions reserved to the trier of fact. The prevailing party is entitled to all reasonable inferences which may be drawn from the evidence.

Upon completion of such an evidentiary review, the appellate court must determine whether the verdict rendered is palpably or flagrantly against the evidence so as to indicate that it was reached as the result of passion or prejudice.

*Hornung, supra.*

Cf. *Lewis v. Bledsoe Surface Mining Co.*, Ky., 798 S.W.2d 459 (1990).

Here, the Court of Appeals did not determine that the verdict was palpably or flagrantly against the evidence so as to indicate that it was reached as a result of passion or prejudice as required by *Hornung.*

## II. Directed Verdict

The trial judge correctly refused to grant a directed verdict, and the Court of Appeals was in error when it held that Klapheke was entitled to a directed verdict as to compensatory damages.

On a motion for directed verdict, the trial judge must draw all fair and reasonable inferences from the evidence in favor of the party opposing the motion. When engaging in appellate review of a ruling on a motion for directed verdict, the reviewing court must ascribe to the evidence all reasonable inferences and deductions which support the claim of the prevailing party. *Meyers v. Chapman Printing Co., Inc .*, Ky., 840 S.W.2d 814 (1992). Once the issue is squarely presented to the trial judge, who heard and considered the evidence, a reviewing court cannot substitute its judgment for that of the trial judge unless the trial judge is clearly erroneous. *Davis v. Graviss*, Ky., 672 S.W.2d 928 (1984).

In reviewing the sufficiency of evidence, the appellate court must respect the opinion of the trial judge who heard the evidence. A reviewing court is rarely in as good a position as the trial judge who presided over the initial trial to decide whether a jury can properly consider the evidence presented. Generally, a trial judge cannot enter a directed verdict unless there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which rea-

sonable minds could differ. Where there is conflicting evidence, it is the responsibility of the jury to determine and resolve such conflicts, as well as matters affecting the credibility of witnesses. *Cf. Taylor v. Kennedy,* Ky.App., 700 S.W.2d 415 (1985). The reviewing court, upon completion of a consideration of the evidence, must determine whether the jury verdict was flagrantly against the evidence so as to indicate that it was reached as a result of passion or prejudice. If it was not, the jury verdict should be upheld. *Cf. Lewis v. Bledsoe Surface Mining Co., supra; Hornung.*

The Court of Appeals reversed the jury verdict of lost compensation benefits because the tort action settlement documents contained no allocation of damages as required by *Mastin v. Liberal Markets,* Ky., 674 S.W.2d 7 (1984).

However, the Court of Appeals misinterpreted the holding in *Mastin, supra,* when it struck down the entire award of lost workers' compensation benefits. In *Mastin,* this Court held that because the allocation was made between Mastin and the tortfeasor, and not the workers' compensation carrier, the workers' compensation carrier and the other defendants cannot be foreclosed by an allocation of items of damage to which they were not parties. This Court remanded the *Mastin* case to the trial court because the defendants were entitled to a fair and impartial decision as to the correct amount for each element of damage for which the Mastins sought recovery at common law, and to an allocation between those elements subject to statutory subrogation and those not so subject.

█ The Court of Appeals overlooked the material evidence that satisfies even the requirement of *Mastin.* Bierman presented evidence in the malpractice action on the allocation of his tort settlement and the jury made a fair and impartial decision pursuant to its instructions as to the allocation of Bierman's liability recovery. Bierman introduced evidence as to the loss of profits from his cattle business, loss of profits from the farming operation and pain and suffering, which were not recoverable under the compensation plan, and he demonstrated to the

satisfaction of the jury why the tort settlement did not include any of the compensation benefits lost as a result of the legal malpractice.

Bierman also introduced proof that his disability did not prevent him from performing his job with the state, and therefore an award for impairment of future earnings was unlikely in the tort case which was admitted by Klapheke to be true. This demonstrates how the tort settlement could not include an amount of money for impairment of future earning capacity, and consequently there was no duplication of the $32,801.50 disability award testified to by Administrative Law Judge Dockter.

When the evidence is taken as true, as required by *Chapman* and *Hornung,* the reviewing court could not determine that the award by the jury of lost compensation benefits was the result of passion or prejudice.

### III.  Punitive Damages

The Court of Appeals overturned the jury verdict awarding $50,000 in punitive damages based on *Fowler v. Mantooth,* Ky., 683 S.W.2d 250 (1984), which provides that the proper considerations to be made by a trier of fact in considering punitive damages are "the character of the defendant's act" and "the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause."

The Court of Appeals incorrectly relies on *Mantooth,* rather than KRS 411.184 and KRS 411.186, the punitive damage statutes. These statutes were enacted subsequent to the holding in *Mantooth,* and are applicable because neither party objected to their validity. Consequently, the statutes control any assessment of punitive damages. *Cf. Shortridge v. Rice,* Ky., 929 S.W.2d 194 (1996); *See also Simpson County Steeplechase Assn. v. Roberts,* Ky., 898 S.W.2d 523 (1995).

The evidence presented here indicates that even under *Mantooth,* it must be considered that the character of the defendant's act, as well as the nature and extent of the harm to the plaintiff that the defendant caused or intended to cause, is obviously determined by the jury. Bierman demonstrated to the jury

that Klapheke committed fraud by preventing Bierman from collecting his claim for malpractice which clearly constitutes harm.

Klapheke's acts of lying to conceal his neglect caused significant delays in the ultimate collection of these claims from Klapheke. If Klapheke had admitted his negligence, Bierman would have received reimbursement for the compensation and no-fault claim long ago. Instead, Bierman had to file the legal malpractice action and prosecute the case through trial and appeal.

■ The Court of Appeals incorrectly determined that the acts of fraud by Klapheke did not exacerbate the damages suffered by Bierman. The decision to reverse the jury's award of punitive damages based on *Mantooth* is reversed because the acts of fraud by Klapheke establish a claim for punitive damages clearly independent from his acts of negligence.

### IV. ALJ Testimony

■ It was not reversible error for the trial judge to permit testimony by the ALJ. The argument that Canon 5 of SCR 4.300, Code of Judicial Conduct, which prohibits a judge from testifying as a witness in a case where he or she is the presiding judge acts to prevent Judge Dockter from testifying in this case is unpersuasive. As noted in Lawson *Kentucky Evidence Law Handbook,* 3d Ed.1993 at 151, KRE 605 "leaves intact the case law that allows a person who participates as a judge in one part of a case to testify in a subsequent and separate proceeding in that case." There is nothing to prevent a judge who is not the sitting or judge from testifying in any legal proceeding. *Cf. Department of Highways v. Hess,* Ky., 420 S.W.2d 660 (1967).

The decision of the Court of Appeals is reversed and the jury verdict entered in the circuit court is reinstated.

All concur.