**NOT RECOMMENDED FOR PUBLICATION**
File Name: 12a1263n.06
**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Dec 07, 2012*

DEBORAH S. HUNT, Clerk

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY CO.;<br>KENNETH L. COOPER; and CYNTHIA COOPER<br><br>    Plaintiffs-Appellants,<br><br>v.<br><br><br>CAR-X ASSOCIATES CORP.; and BUTEN, INC.<br><br>    Defendants-Appellees. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF
KENTUCKY

Before: SILER and COOK, Circuit Judges; STEEH, District Judge.[*]

**SILER**, Circuit Judge. Plaintiffs State Farm Fire and Casualty Co., Kenneth Cooper, and

Cynthia Cooper (collectively "State Farm") brought this action against Car-X Associates Corp. and

Buten, Inc. (collectively "Car-X") claiming negligence and breach of an express warranty after the

Cooper's vehicle exploded and burned down their house. State Farm appeals the denial of their

motions for directed verdict and judgment notwithstanding the verdict under their claim for breach

of an express warranty. We **AFFIRM**.

I.

In 2007, Kenneth Cooper took his vehicle, a 1994 Buick, to the Car-X garage in Newport,

KY for an oil change and possibly a new battery. Kevin Stratman, a Car-X service technician,

---

[*]The Honorable George C. Steeh, III, United States District Judge for the Eastern District
of Michigan, sitting by designation.

performed the "check charging system" service on the vehicle, in part, by using a Midtronics testing device. The Midtronics device is used to determine whether the three components of the charging system – the alternator, the battery, and the starter – are functioning properly. Stratman also visually inspected the wires connecting the battery and the alternator that were readily visible from his vantage point above the vehicle with its hood open. The Midtronics device indicated that the battery was not functioning properly and the clerk at the front desk of the shop advised Cooper that he needed a new battery. Cooper consented and Stratman replaced the battery in the vehicle. After replacing the battery, Stratman verified that the battery, the alternator, and the starter were then functioning properly.

The invoice provided to and signed by Cooper stated, among other things, that the "CK CHARGING SYSTEM" service was performed. Additionally, the invoice stated the following:

CAR-X FULL WARRANTIES
ALL CAR-X AUTO PARTS AND SERVICES ARE UNDER WARRANTY FOR 12 MONTHS OR 12 THOUSAND MILES, WHICHEVER COMES FIRST. . . . .
. . . .
SHOULD YOU EXPERIENCE ANY PROBLEMS OR ANY PARTS WEAR OUT IN THIS TIME FRAME SIMPLY PRESENT THIS SALES INVOICE TO A CAR-X AUTO SERVICE.

Cooper drove the vehicle home and did not operate it over the weekend.

On Monday, the vehicle would not start. After a jump start on the car, Cooper took the vehicle back to the same Car-X location to report his problem. The store manager, Scott Stewart, checked the charging system using the Midtronics device and verified again that the alternator, the battery, and the starter were functioning properly. The following morning, Cooper started the

vehicle next to his house. While Cooper went back inside the house, the vehicle exploded, catching the house on fire. Both the home and the vehicle were a total loss.

State Farm, the Coopers' home insurer, paid for the loss of the home and its contents up to the limit of the insurance policy. The Coopers and State Farm sued Car-X under claims of negligence and breach of an express warranty. Prior to trial, the district court ruled that as a matter of law, Car-X had provided Cooper with an express warranty, covering all parts and services rendered.

At trial, experts for State Farm testified that the fire originated in the right front portion of the vehicle and that an improper connection of the alternator cable to the battery terminal produced excessive heat or a spark that ignited the fire. Car-X's expert testified that the fire originated in the right front portion of the vehicle, but that the cause of the fire was an intermittent short in the alternator cable running from the alternator to the battery. State Farm moved for a directed verdict on the express warranty claim after Car-X's opening statement and again at the close of all the evidence. Both motions were denied. The jury rendered a verdict in favor of the defendants on both claims. Subsequently, the court denied State Farm's motion for judgment notwithstanding the verdict (JNOV). State Farm appeals only the denial of their motions for directed verdict and JNOV under their claim for breach of an express warranty.

II.

A.

As an initial matter, State Farm argues that Car-X's warranty is subject to strict liability. However, each of the cases cited by State Farm involves either a products liability claim or contract

for the sale of goods. What State Farm asserts may be true – that a plaintiff need not prove negligence on the part of the defendant in a products liability or express warranty for goods claim – but the plaintiff must show that the product is defective or that the goods do not conform to the warranty. *See, e.g.,* Ky. Rev. Stat. § 355.2-313 (Kentucky U.C.C. express warranty statute); *Ingersoll-Rand Co. v. Rice*, 775 S.W.2d 924, 928 (Ky. Ct. App. 1988) (plaintiff must prove that a product is defective in a products liability suit).

Likewise, here, to prove that the service was not provided as warranted, State Farm must show that it did not conform to the warranty or that the service was defective. Because the warranty did not describe the service provided, the actions and promises of the Car-X technicians are relevant in determining what was warranted by the "check charging system" service and whether that warranty was breached.

B.

In a similar argument, State Farm also asserts that, as a matter of law, the scope of the warranty includes a guarantee that the components of the charging system will function properly during the term of the warranty. The district court instructed the jury to determine what the check charging system service comprised of and whether Car-X breached the express warranty in light of the service it provided.

An express warranty is a contract term, and as such its interpretation is subject to de novo review by this court. *See Lancaster Glass Corp. v. Phillips ECG Inc.*, 835 F.2d 652, 658 (6th Cir. 1987). However, de novo review here is limited to the interpretation of the express warranty because "findings of fact by the district court shall not be set aside unless they are clearly erroneous." *Id.*

The invoice provided to Cooper makes an express statement that Car-X is providing a term warranty (12 months or 12,000 miles, whichever comes first) for "all Car-X auto parts and services." The invoice also explains that a service called "check charging system" was provided by Car-X to Cooper. The issue is how far the scope of the warranty for the "check charging system" service extends.

Although Car-X provided an express warranty for the "check charging system" service, the warranty did not provide a guarantee regarding the proper functioning of any individual component, unless it was provided by Car-X. The district court allowed the jury to determine, as a question of fact, how far the scope of the warranty extended. Because the invoice was silent as to what the check charging system service entailed, we agree that this was a proper question of fact to be determined by the jury.

### III.

We follow the minority rule in federal diversity jurisdiction cases, which requires that "state law govern[] the standard for granting motions for directed verdicts and judgments not withstanding the verdict." *J. C. Wyckoff & Assocs., Inc. v. Standard Fire Ins. Co.*, 936 F.2d 1474, 1482 (6th Cir. 1991). Under Kentucky law, "when an appellate court is reviewing evidence supporting a judgment entered upon a jury verdict, the role of an appellate court is limited to determining whether the trial court erred in failing to grant the motion for a directed verdict." *Bierman v. Klapheke*, 967 S.W.2d 16, 18 (Ky. 1998).

After reviewing the evidence, the appellate court must determine whether the verdict is "palpably or flagrantly against the evidence so as to indicate that it was reached as the result of

passion or prejudice." *Id.* (citing *National Collegiate Athletic Assoc. v. Hornung*, 754 S.W.2d 855, 860 (Ky. 1988)). "Generally, a trial judge cannot enter a directed verdict unless there is a complete absence of proof on a material issue or if no disputed issues of fact exist upon which reasonable minds could differ" and the "reviewing court cannot substitute its judgment for that of the trial judge unless the trial judge is clearly erroneous." *Bierman*, 967 S.W.2d at 18-19. The standard of review for the denial of a motion for JNOV is the same as the standard of review for the denial of a directed verdict. *See Taylor v. Kennedy*, 700 S.W.2d 415, 416 (Ky. Ct. App. 1985) (the trial court standard for granting a directed verdict or JNOV is the same).

State Farm contends that Car-X issued Cooper an express warranty for services, the check charging system service was performed by Car-X, and because the charging system includes the alternator, the battery, the starter, and all of the wires between these components, Car-X therefore warranted that each of those items would operate properly for the remainder of the warranty period. State Farm argues that because it is undisputed that the fire originated in the charging system, it follows that Car-X breached its warranty and is responsible for the resulting damages.

Regarding the express warranty claim, the jury answered "No" when asked whether Car-X breached the warranty and if so, whether that breach was a substantial factor in causing losses to the Plaintiffs. For the reasons that follow, we hold that the jury verdict is not flagrantly against the evidence so as to indicate that it was the result of passion or prejudice and that it was not clearly erroneous.

Stratman testified that the "check charging system" service was provided to determine whether Cooper needed a new battery. In so doing, Stratman used the Midtronics device to verify the proper functioning of the battery, the alternator, and the starter. Stratman testified that the Midtronics device cannot detect a short in a wire and that the wire would need to be stripped (and replaced) to determine if it had a short. Stratman was not instructed by Cooper or his employer to "check all the cables" when performing the service in question.

Cooper testified that he was told that a machine was used on his car to determine if he needed a new battery. Beyond telling Cooper that they had put a machine on his vehicle to determine if there was a problem and whether he needed a new battery, Car-X did not explain to Cooper what the "check charging system" service entailed. Cooper thought the "check charging system" was to determine whether he needed a new battery, as opposed to a new alternator, starter, or something else. Car-X never told Cooper that it was checking the alternator, the starter, or the cables and connections to the battery and Cooper did not instruct Car-X to check the wires or the electrical system in his car.

Stewart testified that when Cooper returned to Car-X on Monday, Cooper told him the vehicle needed to be jumped to get there and that he wanted the car to be rechecked. When asked by Stewart whether it was possible that the vehicle's headlights had accidentally been left on or a door left open that might have drained the battery, Cooper told him it was possible because someone had been working on the vehicle on Sunday (the day before).

The evidence presented at trial shows that the parties dispute what caused the fire. Although the parties agree that the fire started in the charging system, they disagree about the exact cause of the fire. The Car-X expert testified that the fire started from an intermittent wire short that was not, and according to the Car-X technicians, could not have been inspected as a part of the service provided by Car-X.

Additionally, State Farm asserts that the check charging service required a full inspection of every part of the charging system and that the service warranted all parts of the system going forward for the term of the warranty. However, Cooper was never told that the entire charging system was being inspected to the fullest extent possible. Additionally, Cooper himself testified that he thought the machine used, the Midtronics device, was used solely to determine whether his battery was bad.

Taking as true "all evidence which favors" Car-X, without considering the credibility or the weight which the evidence should be given, and giving Car-X "all reasonable inferences which may be drawn from the evidence," it cannot be said that the jury's verdict on State Farm's express warranty claim was clearly erroneous or that it is flagrantly against the evidence so as to indicate that it was the result of passion or prejudice. *Bierman*, 967 S.W.2d at 18.

**AFFIRMED**.