RENDERED:  JANUARY 30, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0308-MR

SEAN M. MAGUIRE, M.D.                                    APPELLANT


APPEAL FROM HOPKINS CIRCUIT COURT
v.          HONORABLE BRIAN WIGGINS, SPECIAL JUDGE
ACTION NO. 05-CI-00835


ESTATE OF JAMES WILLIAM
CROOK, BY AND THROUGH ITS
EXECUTOR, THOMAS E.
SPRINGER, II                                              APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; CALDWELL AND A. JONES, JUDGES.

THOMPSON, CHIEF JUDGE:  Sean M. Maguire, M.D. (Appellant) appeals from a Judgment of the Hopkins Circuit Court reflecting a jury verdict awarding compensatory and punitive damages to the Estate of James William Crook, by and through its Executor, Thomas E. Springer, II ("the estate").  Appellant argues that

the evidence did not establish that the decedent, Mr. Crook, suffered an actual, compensable emotional injury and was not entitled to punitive damages. Appellant also argues that he was entitled to have the award vacated because the award was excessive. After careful review, we find no error and affirm the judgment on appeal.

## FACTS AND PROCEDURAL HISTORY

In July, 2005, a Madisonville, Kentucky police officer called Mr. Crook at his residence and requested that Mr. Crook come to the police station for questioning. The officer stated that the questioning would center on suspicious activity related to his identity.

Mr. Crook complied with the request, and went to the police station where he was interrogated for several hours regarding his possible involvement with a scheme to illegally use prescriptions for the opioid drug Lortab. The questioning centered on Appellant's use of Mr. Crook's identity. Appellant was Mr. Crook's friend and his treating physician.

According to the record, the police informed Mr. Crook that he was suspected of acting in concert with Appellant to obtain illegal prescriptions using Mr. Crook's identity. Mr. Crook denied involvement in any illegal scheme. He was allowed to leave the police station, but later stated by way of deposition that he was under great stress after leaving the police station due to the threat of

possible arrest or incarceration for a crime in which he had no involvement. Per the record, this stress was magnified by the fact that he was the primary caregiver for his terminally ill wife.

Some weeks later, the police again contacted Mr. Crook to question him about medications in his home. The police either suggested, or Mr. Crook so believed, that he remained under suspicion of being involved with an illegal prescription drug scheme using his identity. Sometime thereafter, the police notified Mr. Crook that he was no longer under suspicion. Mr. Crook would later state that by this time, the stress of being wrongly suspected of criminal involvement, with its underlying threat of arrest and incarceration, had already taken a toll on his life.

The Commonwealth subsequently charged Appellant with four counts of unauthorized procurement of a controlled substance.[1] He entered a guilty plea on each count, in exchange for a ten-year suspended sentence with three days credit for time served; five years of supervised probation; a two-year medical license suspension; and, entry into an addiction recovery program. A few months after his initial contact with the police, Mr. Crook instituted this action against Appellant for negligent infliction of emotional distress (NIED), intentional

---

[1] Kentucky Revised Statutes (KRS) 218A.140.

infliction of emotional distress (IIED), and violation of KRS 411.210 (Kentucky's Identity Theft Act).

The matter proceeded in Hopkins Circuit Court, resulting in the court granting summary judgment in favor of Appellant based on Mr. Crook's failure to produce any expert medical or scientific proof that he had suffered severe emotional injury on the NIED and IIED claims. Mr. Crook appealed to a panel of this Court. That panel reversed in part on Mr. Crook's statutory claim under KRS 411.210(1), allowing the cause of action for emotional distress damages under the identity theft statute to continue. The panel affirmed the circuit court's summary judgment dismissal for failure to produce expert proof of emotional injury.[2] The focus of the opinion was the panel's conclusion that while the NIED and IIED claims required proof in the form of expert opinion—which Mr. Crook failed to produce before the circuit court—the identity theft claim required only lay opinion per *Indiana Insurance Company v. Demetre*, 527 S.W.3d 12 (Ky. 2017). The Kentucky Supreme Court granted discretionary review and affirmed.[3]

The matter was remanded to the Hopkins Circuit Court solely for adjudication of the statutory identity theft claim. About one month later, Mr.

---

[2] *Crook v. Maguire*, No. 2015-CA-000379-MR, 2018 WL 2168796 (Ky. App. May 11, 2018).

[3] The Court of Appeals opinion was affirmed pursuant to Kentucky Supreme Court Rule (SCR) 1.020, after one Justice was not sitting and the remainder were equally split. *Maguire v. Crook*, 605 S.W.3d 343 (Ky. 2020).

Crook died. His estate, by and through the executor Thomas E. Springer, II, was substituted as plaintiff. A jury trial commenced on June 11, 2024. At the close of the proof, Appellant sought and was denied a directed verdict on the estate's claims for statutory emotional and punitive damages. The jury returned a verdict in favor of the estate, awarding $100,000 for emotional damages and $300,000 in punitive damages. Appellant's motions for a judgment notwithstanding the verdict, and to alter, amend, or vacate the judgment, were denied. This appeal followed.

## STANDARD OF REVIEW

> [T]he proper standard of review . . . is set out in *NCAA v. Hornung*, Ky., 754 S.W.2d 855 (1988), which states that when an appellate court is reviewing evidence supporting a judgment entered upon a jury verdict, the role of an appellate court is limited to determining whether the trial court erred in failing to grant the motion for a directed verdict. All evidence which favors the prevailing party must be taken as true and the reviewing court is not at liberty to determine credibility or the weight which should be given to the evidence, these being functions reserved to the trier of fact. The prevailing party is entitled to all reasonable inferences which may be drawn from the evidence.

*Bierman v. Klapheke*, 967 S.W.2d 16, 18 (Ky. 1998). "Upon completion of such an evidentiary review, the appellate court must determine whether the verdict rendered is palpably or flagrantly against the evidence so as to indicate that it was reached as [the] result of passion or prejudice." *Lewis v. Bledsoe Surface Min. Co.*,

798 S.W.2d 459, 461-62 (Ky. 1990) (internal quotation marks and citation omitted).

## ARGUMENTS AND ANALYSIS

Appellant argues that the Hopkins Circuit Court erred in failing to grant a directed verdict in his favor at the close of the evidence. Though he acknowledges that the expert or scientific proof requirement does not apply to an identity theft claim for compensatory and punitive damages per KRS 411.210(1), he argues that Mr. Crook failed to prove an actual emotional injury sufficient to support an award of compensatory damages. He directs our attention to the deposition testimony of Mr. Crook and his pastor, Robert Rich, as well as the trial testimony of Mr. Crook's stepson, Jeff Clayton. Appellant argues that this testimony, taken individually or in whole, falls woefully short of proving that Mr. Crook sustained a compensable emotional injury.

Appellant notes that Mr. Crook stated that after the events at issue, he did not receive any emotional counseling; was never treated for emotional problems; and, never took any medication for anxiety or depression. Appellant also points out that Mr. Crook stated that Appellant hurt his feelings and that he wanted to "whoop" Appellant. Mr. Crook was also unable to label the stress resulting from Appellant's crimes as mild, moderate, or severe.

Similarly, Appellant points to the deposition testimony of Rich and trial testimony of Clayton, which he asserts is equally unpersuasive in proving emotional distress. For example, Rich stated that Mr. Crook "mention[ed] something" about the matter, and that Clayton testified that Mr. Crook was "upset" about the matter. The focus of Appellant's argument is that Mr. Crook, and later his estate, failed to prove actual emotional injury sufficient to support a compensatory or punitive damages award. As such, he argues that the circuit court erred in failing to grant his motion for a directed verdict at the close of the evidence.[4]

Mr. Crook's statutory claim arose from a violation of KRS 514.160(1) based on Appellant's theft of Mr. Crook's identity. KRS 514.160(1) states that,

> [a] person is guilty of the theft of the identity of another when he or she knowingly possesses or uses any current or former identifying information of the other person or family member or ancestor of the other person, such as that person's or family member's or ancestor's name, address, telephone number, electronic mail address,

---

[4] Appellant also argues that the Hopkins Circuit Court erred in denying his motion to alter, amend, or vacate the judgment. Orders denying Kentucky Rules of Civil Procedure (CR) 59.05 motions "are interlocutory, *i.e.*, non-final and non-appealable and cannot be made so by including the finality recitations." *Tax Ease Lien Investments 1, LLC v. Brown*, 340 S.W.3d 99, 103 (Ky. App. 2011) (footnote omitted). Under circumstances void of prejudice, we may consider the appeal as "properly taken from the final judgment that was the subject of the CR 59.05 motion." *Id.* at 103 n.5 (citation omitted). Further, Appellant argues that the circuit erred in denying his motion for a judgment notwithstanding the verdict. In examining the denial of a motion for a judgment notwithstanding the verdict, "we apply the same standard of review that we use when reviewing a lower court's decision to deny a motion for a directed verdict." *Radioshack Corp. v. ComSmart, Inc.*, 222 S.W.3d 256, 261 (Ky. App. 2007) (citation omitted).

-7-

Social Security number, driver's license number, birth date, personal identification number or code, and any other information which could be used to identify the person, including unique biometric data, with the intent to represent that he or she is the other person for the purpose of: . . . (b) [o]btaining benefits or property to which he or she would otherwise not be entitled[.]

KRS 411.210(1) provides for an award of compensatory and punitive damages to the victim of anyone who violates KRS 514.160. KRS 411.210(1) states,

[i]n addition to pursuing any other remedy, anyone who is a victim under . . . 514.160 . . . shall have a cause of action, either where the victim resides or the defendant resides, for compensatory and punitive damages against anyone who violates . . . 514.160 . . . and, if successful, shall be awarded reasonable costs and attorneys' fees.

Appellant requests that we examine the weight and credibility of the evidence to determine if the estate was properly entitled to compensatory damages. Because this matter is before us on the denial of Appellant's motion for a directed verdict and subsequent jury award, however, "the reviewing court is not at liberty to determine credibility or the weight which should be given to the evidence, these being functions reserved to the trier of fact." *Bierman*, 967 S.W.2d at 18. Rather, the estate "is entitled to all reasonable inferences which may be drawn from the evidence." *Id.* Upon completion of such an evidentiary review, we "must determine whether the verdict rendered is palpably or flagrantly against the

-8-

evidence so as to indicate that it was reached as the result of passion or prejudice." *Id.* (citations omitted).

Appellant acknowledged unlawfully using Mr. Crook's identity to illegally obtain a controlled substance for his own use. As a result, Mr. Crook was interrogated by the police and threatened with arrest. This was especially egregious as Mr. Crook was at that time the primary caregiver for his terminally ill wife. Appellant chose a victim whose plight resonated with the jury, and it determined that Mr. Crook suffered a compensable injury as a result of Appellant's volitional acts. This conclusion was based on deposition and direct testimony supportive of Mr. Crook's claim of emotional injury. Further, because this was a claim arising under the identity fraud statute and not IIED or NIED, no expert testimony as to damages was required. *Demetre*, *supra.* Lay testimony was sufficient to support the verdict. *Id.* While Appellant argues that more evidence was needed to support the emotional injury claim, we do not believe that the verdict rendered was palpably or flagrantly against the evidence; therefore, we conclude that the emotional damages award was appropriate and not excessive.

Lastly, we will address the award of punitive damages. KRS 411.210(1) expressly allows for an award of punitive damages to victims of identity theft under KRS 514.160. To determine whether punitive damages should

be awarded and, if so, in what amount, we are guided by KRS 411.186, which states that,

> (1) In any civil action where claims for punitive damages are included, the jury or judge if jury trial has been waived, shall determine concurrently with all other issues presented, whether punitive damages may be assessed.
>
> (2) If the trier of fact determines that punitive damages should be awarded, the trier of fact shall then assess the sum of punitive damages. In determining the amount of punitive damages to be assessed, the trier of fact should consider the following factors:
>
>> (a) The likelihood at the relevant time that serious harm would arise from the defendant's misconduct;
>>
>> (b) The degree of the defendant's awareness of that likelihood;
>>
>> (c) The profitability of the misconduct to the defendant;
>>
>> (d) The duration of the misconduct and any concealment of it by the defendant; and
>>
>> (e) Any actions by the defendant to remedy the misconduct once it became known to the defendant.

Thus, the trier of fact—in this case the jury—determined if punitive damages should be assessed, and the amount of those damages. KRS 411.186. Here, Appellant, being Mr. Crook's friend and physician, occupied a unique position of trust with Mr. Crook. He knew or should have known that serious harm

-10-

would result from his misconduct (KRS 411.186(2)(a) and (b)); he "profited" by unlawfully receiving prescription narcotics using Mr. Crook's identity (KRS 411.186(2)(c)); the conduct was concealed by Appellant, and continued long enough to result in a police investigation, a criminal charge, and a conviction (KRS 411.186(2)(d)); and, there is nothing in the record to indicate that Appellant sought to remedy the misconduct (KRS 411.186(2)(e)).

Unlike compensatory damages, which are often grounded on facts which may be objectively calculated, the amount of punitive damages is not a "fact" to be "tried" by the jury. *Ragland v. DiGiuro*, 352 S.W.3d 908, 916 (Ky. App. 2010) (internal quotation marks and citation omitted). Rather, a "punitive damage award is an expression of . . . moral condemnation" by the community. *Id.* at 917 (citation omitted). A higher ratio of punitive damages to compensatory damages may be justified "in cases in which the injury is hard to detect or the monetary value of noneconomic harm might have been difficult to determine." *Id.* at 921 (internal quotation marks and citation omitted).

In the matter before us, the jury awarded a higher ratio of punitive damages to compensatory damages. Per *Ragland*, this was justified because the monetary value of the noneconomic harm to Mr. Crook was difficult to determine. The award was "an expression of . . . moral condemnation" by the jury, *Ragland*, 352 S.W.3d at 917, because Appellant subjected Mr. Crook to the real possibility

of arrest at a time when his wife was terminally ill.  In light of all of the factors set out in KRS 411.186 and *Ragland*, we conclude that the award and amount of punitive damages was not so palpably or flagrantly against the evidence as to indicate that it was reached as the result of passion or prejudice.  *Bierman*, *supra.* We find no error on this issue.

## **CONCLUSION**

For the foregoing reasons, we affirm the judgment of the Hopkins Circuit Court.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Ronald G. Sheffer
Joseph P. Mankovich
Louisville, Kentucky

J. William Graves
Paducah, Kentucky

BRIEF FOR APPELLEE:

Jason M. Nemes
Dayton N. Blair
Louisville, Kentucky