## Bates, Jr. v. Bates, et al.

(Decided December 17, 1918.)

### Appeal from Letcher Circuit Court.

1. **Trusts—Accounting by Father to Children.**—Where the father, who owns the life estate, procures from his children soon after they become of legal age, their remainder interest in their deceased mother's land at a grossly inadequate price and under

such circumstances as show his desire and intention to cheat them out of their inheritance, the facts imply and equity will construct a trust requiring the father to account to his children for the full value of their interests in the land.

2. Trusts—Laches of *Cestuis Que Trust.*—While the *cestuis que trust* have an election to claim their money or the property in which it has been invested by their trustee this right may be lost by laches.

3. Trusts—Limitation of Actions.—Limitation does not begin to run in favor of a trustee and against the *cestuis que trust* until there has been a repudiation of the trustee and the repudiation has been brought home to the *cestuis que trust.*

DAVID HAYS and HAZELRIGG & HAZELRIGG for appellant

FELIX G. FIELDS and EDWARD C. O'REAR for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affrming upon both the original and cross appeal.

Owen Mullins, a resident of Knott county, Kentucky, died intestate about 1884 in possession of a large boundary of land which he had resided upon and claimed to own under several conveyances and which had been recognized as his without dispute for nearly thirty years. He left surviving him his widow and six children, one of whom was Anzy Bates, the wife of appellant, who survived her father but a short time, leaving, in addition to her husband, four little children whose ages ranged from two to eleven years. Just before her death and realizing she was about to die, Mrs. Bates requested her husband, who was involved in a local feud, to sell out and move away from that community in order that their children might be reared under better conditions, and soon after her death he moved into Pike county and later to Letcher county, but he did not sell her interest in her father's land, no doubt because the title was in their infant children. About 1893 in a suit to partition among his heirs the lands owned by Owen Mullins there was allotted to the four children of Anzy Bates her one-sixth portion thereof, located in the head of Mullins branch and being the upper end of the Mullins lands, which was designated in the allotment and is known in the record as lot No. 1. Appellant as the surviving husband had a life estate by curtesy in lot No. 1, and had

charge of same, being in possession by tenants most of the time. In 1894 and while all of his children were still infants, appellant, made an entry and survey, and had a patent issued therefor to himself, upon 80 acres entirely within the boundary lines of lot No. 1, which as we have seen had been allotted to his children in the division of the Mullins lands only about a year theretofore. After his children became of age he procured from them, deeds to their several undivided interests in lot No. 1, for the recited consideration of $30.00 to each except his daughter Erey, in whose deed the consideration is stated to be $25.00. No conveyance had been made to his children in the partition suit, so after obtaining deeds from them, the first in 1899 and the last in December, 1903, he upon presenting his deeds from his children had an order entered in the partition suit directing the master to convey lot No. 1 direct to him, which was done in January, 1904. In August, 1906, he sold lot No. 1 to Horace Hardaway for $2,600.00 in gold and the next day with this $2,600.00 and $200.00 which he added thereto, bought of Arch Jenkins a tract of land in Letcher county.

In February, 1914, this action was instituted against appellant by his children by his first wife Anzy, in which they alleged that the recited considerations in their deeds to their father for lot No. 1, were not the true considerations but that they were induced by their father to make the conveyances to him by his parol agreement that he would sell the lands as requested by their mother and that he would invest the proceeds in other lands for their benefit and take the title thereto in their names, and that this agreement was the true and only consideration for their conveyances to him, but that in violation of his trust agreement and without their consent or knowledge defendant took the title to the Letcher county land in his own name; that they were the owners thereof and that they ought to be so adjudged, or if this could not be done they should have judgment against the defendant for $2,600.00, the proceeds of their Knott county land with a lien upon the Jenkins tract in which it had been invested.

The defendant for answer denied the alleged trust

agreement and pleaded the five and ten year statutes of limitations as a bar to plaintiffs' right to have their deeds to him corrected upon the ground of fraud or otherwise and that plaintiffs under the allotment of tract No. 1 in the division of the Owen Mullins land acquired title to only about 34 acres of the 162 acres of land he sold to Hardaway and never owned any of the balance of same; that he held title to all of the lands sold to Hardaway, except the 34 acres conveyed to him by plaintiffs, under the patent issued to him in 1894 and conveyances from Miles Bates and others. The reply traverses the affirmative allegations of the petition and pleads that until about one year before the suit was filed appellant recognized his obligations under the parol trust agreement. The issues were completed by a rejoinder traversing the affirmative allegations of the reply.

After proof had been taken and the cause submitted the chancellor found as facts established by the evidence that appellant did not buy his children's interests in lot No. 1, but took title thereto as their trustee; that the 80 acres patented to appellant in 1894 is wholly within lot No. 1 and was not when patented to him vacant land; that plaintiffs, and not defendant, were the real owners of the land conveyed to Hardaway for $2,600.00; that defendant had paid to plaintiffs about $100.00 in the matter of obtaining deeds from them, and that they had acquiesced in defendant taking title in his own name to the Jenkins tract and making valuable improvements thereon; and upon these facts he adjudged that the plaintiffs recover of the defendant the $2,600.00 received for the Knott county land less the $100.00 paid to them, with a lien to secure same upon the Jenkins tract. The defendant has appealed from the judgment against him and the plaintiffs have prosecuted a cross appeal from so much thereof as denied to them title to the Jenkins land.

Appellant's contentions here are, (first) that the evidence is insufficient to establish the alleged parol trust agreement, and, (second) that if established plaintiffs' right to recover thereon was barred by limitations.

In the first place and of prime importance we think is the thoroughly established fact that the defendant

in all of his transactions with his own children and about their land has shown an utter disregard for their interests and his duty toward them, and the conclusion is inevitable from the evidence that, as said by the chancellor in his judgment, "the court would be lending its aid to wrong by allowing the father to take the inheritance of plaintiffs from their mother and convert it to his own use." That that is what he has attempted to do is too plainly manifest for contradiction even by him, and he in a feeble attempt to show he paid his children an adequate price for their inheritance which he got them to convey to him in their needs and almost as soon as they attained their majorities, has to assume they owned only 34 acres when even his three brothers-in-law, one his chief witness, another one of the commissioners to divide the Owen Mullins lands and all of whom were present at and interested in the division, admit that lot No. 1 contained more than 100 acres and that the 80 acres patented by defendant lies entirely upon the lands theretofore allotted to his own children, and within the outside boundary lines of Owen Mullins as they had been claimed by him and disputed by no one during the 29 years he had lived upon the land, and which claim had been recognized and confirmed by a judgment in a court of competent jurisdiction in a suit to partition the lands, to which we may fairly presume in the absence of a showing to the contrary, the defendant as the husband of one of Owen Mullins' daughters and entitled by curtesy to a life interest in her share of the lands, was a party and is by the judgment therein legally bound; and besides, his effort, while in possession as life tenant by curtesy, to disparage the title of his infant children in the fee, and to establish in himself a better and hostile title thereto, is unconscionable and violative of every equitable principle, as well as the natural instincts and duties of fatherhood, and must inure to the benefit of his infant children who were not only his remaindermen but were also naturally and unescapably his wards; Venable v. Slavechamp, 3 Dana 321; Bowling v. Dobyn, 5 Dana, 447; Thurston v. Masterson, 9 Dana, 228; Daviess v. Myers, 13 B. Mon. 511; Perkins v. Smith, 18 Ky. L. R. 509; Turner v. Sawyer, 150 U. S. 586.

And there is yet another reason why we must hold that all of lot No. 1 belonged to appellees when they

conveyed same to him and that is because upon the question as to whether Owen Mullins had prior title to the 80 acres patented to appellant our minds are left in doubt upon a consideration of the testimony of surveyors and other witnesses as to the proper location of Mullins' title papers, and we must therefore abide by the chancellor's finding that this part of lot No. 1 was covered by the prior patent of 1871 owned by Owen Mullins.

So we are trebly sure that appellant's only title to any part of lot No. 1, except his life estate by curtesy, must rest upon the deeds from his children, which furnish of course the only consideration or support for the commissioner's deed to him.

As we have already indicated there is no contention appellant paid his children anything like an adequate consideration for lot No. 1, if they owned all or even a considerable part of same, so having decided they owned all of it we approach a consideration of their deeds to their father with the fact established that they were over-reached and mercilessly cheated when their father paid them about $100.00 for 162 acres of land which he in a few years thereafter sold for $2,600.00 in gold, and if the purpose of this suit were to set aside these conveyances as fraudulently obtained, which is not its purpose in any sense, we would scarcely need to pursue the matter further, because for a parent to thus get title to his children's land for a merely nominal sum amounting to practically no consideration at all for the purpose of converting it to his own use, is an unconscionable violation of the confidential relationship and a fraud upon their rights by one of whom they have a right to demand at least fair treatment.

And the facts above recited are also sufficient to imply, and upon them equity will construct, a trust requiring appellant to account to his children for the proceeds of the sale of their land, and to sustain the chancellor's judgment requiring him so to do; Becker v. Neurath, 149 Ky. 421; Erdman v. Kenney, 169 Ky. 509; Vanbever v. Vanbever, 97 Ky. 344; Pomeroy's Eq. Jurisp., Vol. 3, sec. 1053, unless the statutes of limitations pleaded interpose a bar, which will be considered later.

2.   The effort of appellees is not only to enforce a constructive trust against the proceeds of the sale of

their remainder interests in lot No. 1, in the hands of their father, but goes further and seeks to establish and enforce a parol trust agreement against the Letcher county lands in which the father, as their trustee, invested the proceeds of the sale of lot No. 1, recognizing his full authority to sell and convey to the purchaser a good and sufficient title to lot No. 1; and appellees have prosecuted a cross appeal from so much of the judgment as denied to them title to the Letcher county land purchased by their father with their $2,600.00 and $200.00 of his own money upon the ground that by his parol trust agreement he was obligated so to do; but we need not lengthen this opinion by a review of the evidence as to the agreement, which though quite contradictory is ample we think to sustain it, since, while the *cestuis que trust* had an election if made seasonably to claim either their money or the property in which it was invested, they must in asking equity do equity, and being of legal age when their father on August 24, 1906, took title in his own name, instead of their names as their pleadings state the parol trust agreement to have been, and having stood by, and acquiesced in this partial violation of the agreement, and in his placing valuable improvements thereon, for about eight years before attempting to enforce this part of the agreement, and remembering that his own money paid partly for this land, it would be inequitable it seems to us as it did to the chancellor to give appellees the land. In other words, the right of election as well as the right to a specific performance of the agreement has been lost by laches.

3. The remaining question for determination is whether or not limitations as pleaded was a bar to appellees' right to recover the $2.600.00 derived from a sale of their land August 24, 1906, the suit having been filed February 28, 1914.

Limitations did not begin to run until there was a repudiation of the trust and the repudiation was brought home to the *cestuis que trust,* and the mere fact that appellant took title in himself to the Letcher county land in 1906 and had the deed recorded promptly, even if with the actual knowledge of plaintiffs, was not of itself a repudiation of the trust, much less notice to appellees of a repudiation as now argued for appellant, under the circumstances of this case, because appellant had a life interest in the trust fund and besides paid for

the land partly with his own money, so that buying the Letcher county land and taking title in his own name was not in the least inconsistent with a purpose to fairly account to his children for the value of their interests in the Knott county land which they had authorized him to sell, and to hold or invest in other lands the proceeds thereof for their benefit, and there is no evidence of any such a repudiation being made or brought home to any of appellees until about a year before the suit was filed, nor does appellant plead any repudiation, but relies entirely upon the deeds from his children as divesting them of their every right or interest in their mother's land and pleads only that their right to correct those deeds is barred by limitations and that such right was barred five and ten years after the dates of those deeds; hence the plea of limitations was not sustained.

Wherefore, the judgment is affirmed, upon both the original and the cross appeal.