RENDERED:  JULY 9, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0503-MR

PROVIDENCE HILL, LLC                                                    APPELLANT

v.
APPEAL FROM BOYD CIRCUIT COURT
HONORABLE JOHN F. VINCENT, JUDGE
ACTION NO. 18-CI-00526

DAMIEN NDZANGA                                                          APPELLEE

AND

NO. 2020-CA-0575-MR

DAMIEN NDZANGA                                                    CROSS-APPELLANT

v.
CROSS-APPEAL FROM BOYD CIRCUIT COURT
HONORABLE JOHN F. VINCENT, JUDGE
ACTION NO. 18-CI-00526

PROVIDENCE HILL, LLC                                              CROSS-APPELLEE

BEFORE: GOODWINE, JONES, AND LAMBERT, JUDGES.

GOODWINE, JUDGE: Providence Hill, LLC ("Providence Hill") appeals from the March 27, 2020 judgment of the Boyd Circuit Court granting Damien Ndzanga ("Ndzanga") damages for the fair market value of his personal property. Ndzanga cross-appeals from the same judgment awarding Providence Hill damages for unpaid rent and fees. After careful review, we affirm.

## BACKGROUND

Ndzanga initiated this action for return of, or monetary damages for, his personal property and security deposit. Providence Hill filed a counter-claim for damages in the amount of two months' unpaid rent and an early termination fee. A bench trial was held on February 3, 2020. The trial court heard testimony from Ndzanga; Stacy Cooper, an auctioneer; a representative of Providence Hill; and a Boyd County sheriff's deputy.

Ndzanga signed a residential lease with Providence Hill in August 2017. He paid a security deposit in the amount of $870.00 and agreed to pay the same amount each month in rent. The lease was for a term of one year and included a provision allowing Ndzanga to terminate the lease early by providing Providence Hill thirty days' notice in writing and paying an early termination fee

equal to one month's rent. The lease also included a provision prohibiting oral modification of the contract.

Due to a change in employment, Ndzanga vacated the apartment in early 2018. He failed to pay rent in February or March 2018. He testified to speaking to Providence Hill's rental agent prior to leaving. He claimed to have notified her he would be gone during February 2018 and would return in mid-March 2018 to remove his personal property from the apartment. Ndzanga believed, based on his conversation with the rental agent, he would be able to terminate his lease early without penalty and his security deposit would cover one month of unpaid rent. The property which remained in the apartment included two sofas; a king-sized bed frame, mattress, and box springs; a dining room table with four chairs; a chest; a four-drawer dresser; and a mirror.

Based on Ndzanga's failure to pay rent, Providence Hill filed an action for forcible detainer in the Boyd District Court. Providence Hill prevailed, and a writ of possession was entered by the district court. The deputy sheriff executed the writ of possession by accompanying a representative of Providence Hill to the apartment to ensure no one unlawfully remained on the premises. According to his testimony, after completing a walkthrough, the deputy sheriff left the property. He did not remove Ndzanga's personal property from the apartment nor did he assist the representative from Providence Hill in doing so.

Ndzanga returned to the apartment in mid-March 2018, after the writ of possession had been executed. He then requested Providence Hill return his personal property. Providence Hill did not return the furniture and provided no explanation of what had been done with it. Providence Hill's representative testified its standard procedure for disposing of a former tenant's personal property was to remove the property from the apartment and set it on the sidewalk. Once personal property is set out, anyone may take it, or it may be placed in the trash. Providence Hill kept no record of what personal property was left in any apartment or whether it disposed of such property upon execution of a writ of possession.

At trial, Cooper testified to the fair market value of Ndzanga's furniture. He was given photographs Ndzanga had taken of the furniture. Cooper testified the furniture was valued at $21,963.00 in new condition. Because Ndzanga owned the furniture for approximately one year before he lost possession of it, Cooper reasoned a twenty percent reduction in value was appropriate. Taking into consideration this reduction, Cooper determined the fair market value of the furniture was $17,570.40.

The trial court found, based on evidence presented at trial, Ndzanga violated the terms of the lease agreement by failing to pay rent and erroneously assuming his security deposit would cover his unpaid rent. The court found, because the lease agreement prohibited oral modifications, Ndzanga's alleged

-4-

conversations with Providence Hill's rental agent did not alter its terms. On this basis, the trial court granted Providence Hill a judgment against Ndzanga in the amount of $2,610.00 for two months of unpaid rent and the unpaid early termination fee, as well as one-third of its costs and interest at the judgment rate until paid.

The trial court further found Providence Hill committed conversion of Ndzanga's personal property. Relying on Ky. OAG[1] 82-553, the court found "[t]he person receiving property has an obligation not to destroy someone else's property without contractual ability or other agreement to do so." Record ("R.") at 149-50. The court deemed it inequitable that Providence Hill disposed of the furniture without documenting it or providing Ndzanga notice. The court then imposed a constructive trust because of Providence Hill's "unconscionable conduct." *Id*. at 150-51. The trial court awarded Ndzanga damages in the amount of $17,570.40 and two-thirds of his costs with interest at the judgment rate until paid.

No post-judgment motions were filed by either party. This appeal and cross-appeal followed.

---

[1] Kentucky Attorney General Opinion.

## STANDARD OF REVIEW

"We review questions of law *de novo* and, thus, without deference to the interpretation afforded by the [trial] court." *Marshall v. Kentucky Farm Bureau Mutual Insurance Company*, 618 S.W.3d 499, 502 (Ky. App. 2020) (internal quotation marks and citation omitted). Where a trial court sits without a jury, "its factual findings shall not be set aside unless clearly erroneous[.]" *Cole v. Gilvin*, 59 S.W.3d 468, 472 (Ky. App. 2001) (internal quotation marks and citation omitted). "A factual finding is not clearly erroneous if it is supported by substantial evidence." *Id.* at 472-73 (citation omitted). "[D]ue regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Id.* at 472 (internal quotation marks and citation omitted).

## ANALYSIS

Before reaching the merits of this appeal, we must address Providence Hill's failure to comply with the briefing requirements of CR[2] 76.12. An appellant's brief must include "at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." CR 76.12(4)(c)(v). "It is not the function or responsibility of this court to scour the record on appeal to ensure that an issue has

---

[2] Kentucky Rules of Civil Procedure.

been preserved." *Koester v. Koester*, 569 S.W.3d 412, 415 (Ky. App. 2019) (citation omitted). Providence Hill's brief is devoid of preservation statements.

"Compliance with CR 76.12 is mandatory." *Petrie v. Brackett*, 590 S.W.3d 830, 835 (Ky. App. 2019) (citation omitted). "Our options when an appellate advocate fails to abide by the rules are: (1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions . . .; or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010) (citation omitted). Because Providence Hill's arguments fail on the merits, we will ignore the deficiency and proceed with review of its claims. Counsel cannot be assured of such leniency if non-compliant in the future.

Turning to the merits of this appeal, Providence Hill first argues the trial court erred in imposing a duty for a landlord to keep and preserve a tenant's personal property. As part of this argument, Providence Hill contends: (a) the trial court's ruling is inconsistent with Kentucky law; (b) where other states have imposed such a duty, they have done so by statute; and (c) Providence Hill never received Ndzanga's property and so, had no duty to preserve it. Providence Hill further argues: (1) there was no fraud or breach of duty upon which to base the imposition of a constructive trust; (2) Ndzanga presented insufficient evidence of damages; and (3) Ndzanga's testimony regarding statements by the rental agent

should not have been admitted into evidence. On cross-appeal, Ndzanga alleges the trial court erred in granting Providence Hill a judgment against him for unpaid rent and fees.

First, Providence Hill argues the Uniform Residential Landlord and Tenant Act ("URLTA") does not impose any duty on landlords related to former tenants' personal property. However, Providence Hill fails to acknowledge that the URLTA is applicable only to the cities, counties, and urban-county governments which elect to enact it. KRS[3] 383.500. It is unclear from the record whether Providence Hill is located within the city limits of Ashland, Kentucky. However, Providence Hill has not identified nor has our research revealed, any ordinance by which the City of Ashland or the Boyd County Fiscal Court has adopted the URLTA. Therefore, the URLTA has no applicability to this action.

Furthermore, the trial court did not base its decision on any statute including the URLTA, but rather found Providence Hill committed the intentional tort of conversion. In reaching this decision, the trial court relied on Ky. OAG 82-553. While this Court is not bound by attorney general opinions, they are "highly persuasive." *Palmer v. Driggers*, 60 S.W.3d 591, 596 (Ky. App. 2001) (footnote omitted).

---

[3] Kentucky Revised Statutes.

[T]he landlord must give notice to the tenant to remove the personal property and a reasonable time in which to so remove the goods. **It is suggested that the landlord act cautiously so as to avoid potential liability for conversion.** One such cautious measure would be to provide notice which is reasonably calculated to inform the tenant, which under the circumstance may be by certified mail, return receipt requested. . . .

If the tenant fails after notice to remove the personal property, the landlord may cause its removal in a reasonable manner. . . . The personal property may be stored, such as in a storage area on the landlord's premises or in a warehouse, until it is claimed by the tenant or until the property is abandoned.[4]

Ky. OAG 82-553, *1-2 (emphasis added).

The opinion is primarily supported by citations to case law from other states as the attorney general acknowledges "[i]n Kentucky, there is little statutory or common law guidance on this matter." *Id.* at *1. Many states have enacted statutes either imposing a duty on landlords to care for a tenant's personal property after an eviction or mandating no such duty exists.[5] In other states where no such statute has been enacted, the courts have relied on common law principles in

---

[4] "[T]he doctrine of abandonment precludes any claim for conversion." *C&H Manufacturing, LLC v. Harlan County Industrial Dev. Auth., Inc.*, 600 S.W.3d 740, 746 (Ky. App. 2020) (citation omitted). Although Providence Hill alleged Ndzanga abandoned the furniture before the trial court, it has not raised this argument on appeal. Therefore, we will not address this argument herein.

[5] From our research, legislatures in at least forty states and the District of Columbia appear to have either imposed some duty on landlords to care for a former tenant's property or absolved landlords of such responsibility by statute. Legislatures in five states –Kentucky, Ohio, Michigan, Iowa, and New York –have enacted no such statute.

deciding issues such as those presented herein.  *See Gum v. Fitzgerald*, 262 N.W.2d 924, 927 (Mich. App. 1977) (holding a tenant may only succeed on a claim of conversion where he has made a reasonable attempt to recover the personal property to establish his right to possession has been refused); *see also Lewis v. Jaeger*, 818 N.W.2d 165, 188-89 (Iowa 2012) (holding no conversion occurred where the trial court found the landlord's testimony regarding return of the tenant's property credible); *see also Glass v. Wiener*, 104 A.D.2d 967, 968 (N.Y. App. 1984) (holding a landlord can be liable for conversion of a tenant's property and has no absolute right to retain or destroy a tenant's personal property even where the tenant has been evicted); *see also Ringler v. Sias*, 428 N.E.2d 869, 870 (Ohio App. 1980) (applying common law to determine a bailment is established only where the landlord takes some act consistent with intent to possess the former tenant's property).  Here, the trial court also relied on common law in finding Providence Hill's actions constituted a conversion.  This is not inconsistent with Kentucky law.  Even in jurisdictions where the URLTA has been enacted, the statute was meant only to supplement, not replace, common law.  *Miller v. Cundiff*, 245 S.W.3d 786, 789 (Ky. App. 2007).

Conversion is defined as "the wrongful exercise of dominion and control over property of another[.]"  *C&H Manufacturing, LLC*, 600 S.W.3d at 745 (internal quotation marks and citation omitted).  The elements of conversion are:

(1) the plaintiff had legal title to the converted property;

(2) the plaintiff had possession of the property or the right to possess it at the time of the conversion;

(3) **the** *defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property* **and which was to the defendant's own use and beneficial enjoyment;**

(4) the defendant intended to interfere with the plaintiff's possession;

(5) *the plaintiff made some demand for the property's return which the defendant refused*;

(6) the defendant's act was the legal cause of the plaintiff's loss of the property; and

(7) the plaintiff suffered damage by the loss of the property.

*Id.* (some emphasis added) (citation omitted).

With regard to the trial court's finding of conversion, Providence Hill argues it never exercised dominion over Ndzanga's furniture. Instead, Providence Hill alleges the deputy sheriff who executed the writ of possession removed the furniture from the apartment. However, the deputy sheriff's testimony directly contradicts this assertion. He testified that, when executing the writ of possession, he only entered the apartment to conduct a walkthrough to ensure no one unlawfully remained on the premises. Video Record ("V.R.") at 2/3/2020, 10:41:38-10:42:08. He then left the apartment and its contents in the possession of

the representative of Providence Hill. *Id.* He specifically denied removing or assisting in the removal of Ndzanga's furniture. *Id.* at 10:43:02-10:43:04. Furthermore, Providence Hill's representative testified to the company's standard practice of setting former tenants' personal property on the sidewalk after an apartment is returned to its possession. *Id.* at 10:36:37-10:37:00. Based on this unrefuted testimony, we cannot determine the trial court erred in finding Providence Hill exercised dominion over Ndzanga's furniture.

Furthermore, Providence Hill's reliance on *Bell v. Commonwealth*, 423 S.W.3d 742 (Ky. 2014), in arguing the trial court is prohibited from using its equitable powers to award Ndzanga damages is misplaced. It is true that "[o]nly when there is no law or precedent does a court have the authority to exercise pure equity." *Id*. at 747 (citation omitted). Equity supplements the law where there is no remedy at law. *Id.* at 747-48. However, here the trial court did not exercise pure equity. Instead, the court applied common law principles in reaching its decision and utilized an available remedy at law, making *Bell* inapplicable.

Providence Hill next argues imposition of a constructive trust was inappropriate because there was no breach of duty or fraud. A constructive trust is a remedy imposed where "legal title to property has been acquired or held under such circumstances that the holder of that legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." *Bewley v. Heady*,

-12-

610 S.W.3d 352, 357 (Ky. App. 2020) (citations omitted). The injured party is not required to prove actual fraud. *Kaplon v. Chase*, 690 S.W.2d 761, 763 (Ky. App. 1985) (citation omitted). Instead, "a court exercising its equitable power may impress a constructive trust upon one who obtains legal title . . . *in any other unconscientious manner*, so that he cannot equitably retain the property which really belongs to another." *Bewley*, 610 S.W.3d at 358 (citations and internal quotation marks omitted).

Providence Hill argues its only action was to lawfully evict Ndzanga. The trial court found Ndzanga violated the terms of his lease and, on this basis, awarded Providence Hill a judgment for unpaid rent and fees. Although related, the issue of what was done with Ndzanga's personal property is separate from the eviction. Providence Hill cites no authority which precludes a trial court from finding a landlord liable for conversion of personal property or imposing a constructive trust when a tenant has been lawfully evicted. "Kentucky law has long held that an alleged error may be waived when an appellant fails to present any authority in support of his argument advanced on appeal." *Bailey v. Bailey*, 399 S.W.3d 797, 801 (Ky. App. 2013) (citation omitted). Furthermore, a lawful eviction does not protect a landlord from liability for conversion of a former tenant's personal property. Ky. OAG 82-553, *1.

Herein, the trial court found Providence Hill's conversion of Ndzanga's personal property unconscionable when it imposed the constructive trust. R. at 150-51. Providence Hill's only argument against the trial court's finding of unconscionable conduct is to again assert it was never in possession of Ndzanga's furniture. In making this argument, Providence Hill repeats the allegation that the deputy sheriff removed the property from the apartment, which is directly refuted by the record. Without any further argument from Providence Hill, we have no basis for determining the trial court erred in imposing the constructive trust.[6]

Next, Providence Hill argues Ndzanga presented insufficient evidence of damages.

> Where property is destroyed, or is converted, so that the title either is, or is regarded as, out of the former owner, damages are the pecuniary representative of the property, and take its place. The plaintiff has lost or abandoned his claim to the *property*; his claim against the defendant is

---

[6] We note that Kentucky courts have required the party seeking the imposition of a constructive trust to prove a confidential relationship with the party against whom the trust is imposed. *Keeney v. Keeney*, 223 S.W.3d 843, 849 (Ky. App. 2007) (citation omitted); *see also Middleton v. Beasley*, 186 Ky. 252, 216 S.W.591, 592 (1919). "[T]he existence of the relationship in any particular case is to be determined by the facts established." *Keeney*, 223 S.W.3d at 849-50 (citation omitted). In addition to fiduciary relationships, the courts have recognized close family relationships, such as between a parent and child or spouses, to be confidential relationships which, when violated, can support the imposition of a constructive trust. *See Bates v. Bates*, 182 Ky. 566, 206 S.W. 800, 802 (1918); *see also Kaplon*, 690 S.W.2d at 762; *see also Keeney*, 223 S.W.3d at 843. No authority defines the relationship between a typical landlord and tenant as such a confidential relationship. However, because our review is confined to errors raised by Providence Hill, its failure to raise this issue on appeal precludes our review of it. *See Milby v. Mears*, 580 S.W.2d 724, 727 (Ky. App. 1979).

-14-

for an equivalent sum of *money*. In this point, a
conversion very nearly resembles a sale.

*Batson v. Clark*, 980 S.W.2d 566, 575 (Ky. App. 1998) (citation omitted). "It is
well-established that the measure of damages for a claim of conversion is generally
the fair market value of the property at the time of conversion." *Jasper v. Blair*,
492 S.W.3d 579, 583 (Ky. App. 2016) (citation omitted). It is the plaintiff's
burden to prove the fair market value of the property. *Id.*

Herein, Ndzanga presented photographs he took of his furniture at the
time he purchased the items. The photographs were given to Cooper for valuation
of the furniture. Providence Hill alleges the photographs do not reflect the
furniture purchased by Ndzanga. However, Ndzanga testified the photographs
were accurate depictions of his furniture and were taken on the day he purchased it.
V.R. at 2/3/2020, 10:22:45-10:23:20.[7]

> Regardless of conflicting evidence, the weight of the
> evidence, or the fact that the reviewing court would have
> reached a contrary finding, due regard shall be given to
> the opportunity of the trial court to judge the credibility
> of the witnesses because judging the credibility of
> witnesses and weighing evidence are tasks within the
> exclusive province of the trial court.

*Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citations and internal quotation
marks omitted). While receipts documenting Ndzanga's purchase of the furniture

---

[7] The photographs appear to have been taken when the items were in the furniture store. During
his testimony, Ndzanga explained he took the photographs to send to friends at the time of his
purchase. V.R. at 2/3/2020, 10:23:25-10:23:41.

-15-

may have been preferable to the photographs he produced at trial, the trial court found Ndzanga's testimony that the photographs were accurate depictions of his furniture credible.

Furthermore, Providence Hill produced no evidence to show the furniture in the photographs was not that which was in the apartment when it was returned to the company's possession. It had no policy for documenting personal property left in apartments by former tenants or the manner in which it disposed of such property.[8] Where the trial court was convinced by the testimony and evidence presented by Ndzanga and where Providence Hill presented no evidence to the contrary, we cannot determine the court erred in its findings.

Next, Providence Hill argues the trial court erred in allowing Ndzanga to testify to statements made by the rental agent. According to Ndzanga's testimony, the rental agent agreed to allow him to terminate his lease early, to use his security deposit for his February 2018 rent, and to return to retrieve his furniture and pay rent for March 2018 in mid-March. V.R. at 2/3/2020, 10:03:00-10:04:30. The trial court was unconvinced by Ndzanga's testimony and found the lease agreement prohibited oral modification of the contract. On this basis, the court determined Ndzanga violated the terms of the lease, entitling Providence Hill

---

[8] Without any such records or attempts to provide notice to former tenants before disposing of their personal property, landlords leave themselves vulnerable to claims for conversion. Ky. OAG 82-553, *1.

-16-

to a judgment against him in the amount of $2,610.00 for two months of unpaid rent and the unpaid termination fee.

Providence Hill argues the rental agent's statements were inadmissible under KRE[9] 804(b)(3) because they were not against the company's interests. The rental agent was unavailable under KRE 804(a)(4) because she passed away prior to trial. Where the declarant is unavailable, the following out-of-court statements are not excluded:

> A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

KRE 804(b)(3). "The interest involved must not be too indirect or remote." *Fisher v. Duckworth*, 738 S.W.2d 810, 815 (Ky. 1987) (citation omitted). Contrary to Providence Hill's argument, the rental agent's statements were directly against the company's pecuniary interests. Had the lease not prohibited oral modification, the rental agent's agreement with Ndzanga would have deprived Providence Hill of at least one month's rent and the termination fee. Therefore, the trial court did not err in allowing Ndzanga to testify to the rental agent's statements.

---

[9] Kentucky Rules of Evidence.

Finally, on cross-appeal, Ndzanga alleges Providence Hill should not have been granted the judgment against him for the unpaid rent and fees. Ndzanga first argues the trial court erred where the parties orally modified the lease agreement. "Under contract law, a written instrument will be strictly enforced according to its terms absent ambiguity." *Grass v. Akins*, 368 S.W.3d 150, 152-53 (Ky. App. 2012) (citation omitted). Herein, the lease agreement explicitly prohibits oral modification of the contract. Therefore, Ndzanga's argument must fail.

Ndzanga also argues he should not have been liable for two full months of unpaid rent because the writ of possession was executed on March 16, 2018. He cites no authority supporting this assertion. Again, "[o]ur courts have established that an alleged error may be deemed waived where the appellant fails to cite any authority in support of the issues and arguments advanced on appeal." *Hadley v. Citizen Deposit Bank*, 186 S.W.3d 754, 759 (Ky. App. 2005) (citations omitted). "It is not our function as an appellate court to research and construct a party's legal arguments[.]" *Id.* Therefore, Ndzanga is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing, we affirm the judgment of the Boyd Circuit Court.

ALL CONCUR.


BRIEFS FOR APPELLANT/CROSS-APPELLEE:

David E. Davidson
Covington, Kentucky

BRIEF FOR APPELLEE/CROSS-APPELLANT:

R. Stephen McGinnis
Erin N. Hall
Greenup, Kentucky